LIZZIE O'DONNELL KULP, APPELLANT, V. BERNARD HEI-
MANN ET AL., APPELLEES.

FILED NOVEMBER 14, 1911.   No. 16,554.

Guardian and Ward: SALE OF LAND: RATIFICATION. A final settlement
  between a guardian and his ward, after the ward has attended
  his majority, in the absence of fraud or misrepresentation, if
  made in a proper court, after investigation, and with knowledge
  on the part of the ward that a portion of the distributive share
  which he receives of his father's estate is the proceeds of a sale
  of his land, will amount to a ratification and affirmance of such
  sale, and the ward is thereby estopped to question its validity.
  *Borcher v. McGuire*, 85 Neb. 646.

APPEAL from the district court for Cuming county:
GUY T. GRAVES, JUDGE. *Affirmed.*

*T. J. Mahoney* and *J. A. C. Kennedy*, for appellant.

*A. R. Oleson* and *Baldrige, De Bord & Fradenburg*,
contra.

BARNES, J.

Action in ejectment to obtain possession of an undi-
vided one-fourth of the northeast quarter of section 3,
township 21 north, of range 5 east of the sixth P. M., situ-
ated in Cuming county, Nebraska. The cause was tried
to the district court without the intervention of a jury.
The trial resulted in a judgment for the defendants, and
the plaintiff has appealed.

The errors assigned and relied on for a reversal are, in
substance, as follows: The findings and judgment of the
district court are contrary to law; the findings and judg-
ment of the district court are not sustained by the evi-
dence.

It appears that one James O'Donnell, on or about July
1, 1893, died testate in Cuming county, Nebraska, leaving
a widow and three children surviving him, one of whom is
the plaintiff in this action; that at the time of his death

O'Donnell left some land in Kansas, a timber claim in Garfield county, Nebraska, both of doubtful value, and two tracts of land in Cuming county, which are referred to in the record as the Monterey land and the Bancroft land. He also left personal property of the value of $850. The Monterey land, which is the matter in dispute, consisted of 160 acres, and had been the homestead where O'Donnell and his wife and children had formerly lived for a number of years. A few years prior to his death O'Donnell purchased from the government of the United States an 80-acre tract, known as the Bancroft land, and moved his family, including the plaintiff, from the Monterey farm to the Bancroft land, which thereafter became the family homestead. At the time of his death there was due from him to the government upon the Bancroft land $1,008, which constituted a personal obligation; and it may be further stated that a failure to pay this obligation would have resulted in the loss of the homestead, for upon such failure it would have reverted to the government. O'Donnell's will contained a bequest of $200 to the church of Monterey, and a legacy to his sister of $2,500, and devised, subject to other conditions, the testator's real property in four equal parts, giving to his wife and to his children each one-fourth thereof. The will also directed his executor to pay his funeral charges, the expenses of administration, and all of his debts out of his personal property; and further expressly provided that, if his personal property was insufficient, the executor should sell so much of his real estate as might be found necessary to accomplish that purpose. The will was admitted to probate, and one M. J. Hughes was appointed executor thereof. It appears from the evidence that the claims filed against the estate and the costs of administration amounted to $563.13. There were some taxes due upon the land belonging to the estate, certain allowances were made to the widow for her support and the maintenance and support of the children, which, in addition to the legacies referred to in the will, amounted to about

$4,300. The personal estate was sold for $850.27. It appears that it became necessary for the executor to pay the $1,008 due to the government in order to save the homestead known as the Bancroft land. Therefore the personal property left by the testator was insufficient to pay his debts and the charges against his estate. It further appears that it was impracticable to sell either the land in Kansas or the Garfield county timber claim; that the Bancroft land was occupied as a homestead, and it was deemed necessary to sell at least part of the Monterey land, which is the subject of this action, to pay the testator's debts. It is shown by the evidence that the executor thought it advisable not to rely wholly upon the power obtained in the will to sell the land in question, and an application was made to the district court for Cuming county for an order to sell so much of the Monterey land as should be found necessary to pay the testator's debts. The court found that the Monterey land could not well be divided, and made an order for the sale of the entire tract. The land was sold thereunder to one J. F. Losch for $5,600, which the record shows was its full value at that time. The proceedings were examined, the sale was confirmed by the district court, and a deed was executed and delivered to the purchaser, who shortly thereafter sold and conveyed the land to the defendant Bernard Heimann, who immediately took possession of it, has made valuable and permanent improvements thereon, and has occupied it as his home for more than 17 years.

The plaintiff's main contention is that the district court, by reason of certain defects or irregularities in its proceedings, had no jurisdiction to make the order for the sale of the land in question; that the sale through which the defendants derived their title was void, and therefore she should have had the judgment. We may say, in passing, that it is probable that the matters upon which plaintiff relies to deprive the district court of jurisdiction to make the order were mere irregularities; but we are not required to pass upon that question, for we are of opinion

that our decision must be ruled by *Borcher v. McGuire*, 85 Neb. 646, where practically the same questions were involved as those now presented for our determination. It appears that the plaintiff and the other heirs of the testator, after they attained their majority, with the consent and aid of the county court of Cuming county, settled with their guardian, accepted that portion of the proceeds of the sale of their land then in his hands, and consented to his discharge. The record in this case contains the following finding or conclusion made by the trial court. "The court further concludes, as a matter of law, that plaintiff, by reason of her knowledge at the time of her final settlement with her guardian that the money she received at said time was part of the proceeds of the sale of the land in controversy, and having elected to accept the money, is now estopped from claiming the land." The rule is well settled that in an action at law the findings of facts made by the trial court will be sustained, unless it appears from the evidence that they are clearly wrong. It is shown by the evidence in this case, beyond question, that plaintiff settled with her guardian, and accepted her share of the proceeds of the sale of the land which is now the subject of this controversy. She was a well-educated person and was possessed of more than average intelligence. She testified, among other things, that she knew, in a general way, what land her father had when he died, that she thought of it at the time she got her money, and that she knew the land in question had been sold. She also testified that she knew about her father's will, and of his bequest of $2,500 to his sister, and that she knew what was left to her mother and the three children. She said: "I think I heard afterwards he left $200 to the Monterey church. I think I heard it through my aunt." When asked when she first learned that the Monterey land was sold, she said: "I don't remember." She admitted, however, that it was before she made her settlement with the guardian. The other heirs testified that when they settled with the guardian they knew that

the money which they received was a part of the proceeds of the sale of the Monterey land. It further appears that they, together with the plaintiff, questioned the amount, and insisted that they ought to have more money from their father's estate; that Judge Krake, who was then the county judge of Cuming county, assisted in making the settlement. He testified that, together with the plaintiff and the other heirs, he went over the guardian's reports and the records in his office in relation to the matter, in order to satisfy them as to the correctness of the amount which they ought to receive; that they talked about the sale of the property, and that they were then referring to the property that executor Hughes sold; that after the examination they accepted the money from their guardian and consented to his discharge.

Without quoting any more of the evidence, we think it may be said that it was sufficient to support the findings of the district court. This brings the case clearly within the rule announced in *Borcher v. McGuire, supra,* where it was held that the acceptance of his distributive share, by a ward from his guardian, of an estate, and a request for his discharge, in the absence of fraud or misrepresentation, amounts to a ratification of the guardian's acts; that, if the ward has knowledge that a portion of the fund received by him was the proceeds of the sale of his land, this would be a ratification and affirmance of such sale, and it would make no difference whether the sale proceedings were regular, voidable, or void.

Counsel for the plaintiff have challenged the soundness of that opinion; but, after a careful review of it, we are unable to see how we could have decided the question otherwise. That was an action to recover another part of the real estate owned by James O'Donnell at the time of his death, and practically the same questions were involved in that case as those which are before us on this appeal. The record in this case contains practically the same evidence presented in that one, together with some additional testimony tending strongly to support the findings and judgment of the trial court.

For the foregoing reasons, plaintiff's contention must fail, and the judgment of the district court is

AFFIRMED.