Wilson v. Wilson.

AFFIRMED.

ANNA J. WILSON, APPELLANT, V. L. AUGUSTUS WILSON, APPELLEE.*

FILED NOVEMBER 28, 1911.   No. 16,930.

1. Insane Persons: GUARDIANSHIP: DUTIES OF GUARDIAN. A husband appointed as guardian of his insane wife's estate sustains a peculiarly close and confidential relation to her, and will not be permitted to use her property or his position for his advantage or to her detriment.

2. ———: ———: ———. The county court may authorize a guardian to invest his ward's funds, and the guardian should apply for directions, in case he holds such funds and a threatened foreclosure of a real estate mortgage may, if prosecuted to a conclusion, result in the sacrifice of her dower and homestead interests in the mortgaged land; and the fact that while sane she proposed to permit the land to be sold at judicial sale, so that she could secure money in lieu of her interest in the real estate, will not justify inaction on his part.

3. ———: ———: LIABILITY OF GUARDIAN. If the husband and guardian of an insane woman purchases at judicial sale real estate wherein she has dower and homestead estates which have not been admeasured, upon becoming sane she may hold him as trustee, without regard to whether there was active fraud in the transaction.

4. Trial: CONSOLIDATION OF ACTIONS. A county court has exclusive original jurisdiction to settle the accounts of guardians appointed by it; but if some features of that accounting are also involved in an action in equity pending in the district court between the guardian and ward, and the contention with respect to the

* Motion to modify opinion overruled. See opinion, p. 360, post.

guardian's accounts is pending in that court on appeal, the dis-
trict court should consolidate the cases for trial, so that the
rights of the parties will be fully protected.

5. **Insane Persons:** GUARDIANSHIP: LIABILITY OF GUARDIAN. Where,
in an action to foreclose a real estate mortgage, the court appoints
a guardian *ad litem* for an insane woman, who has a dower and
a homestead estate in the land, and the general guardian fails to
protect these estates, the general guardian will not, solely for that
reason, be liable in damages.

6. ———: ———: ACCOUNTING. A guardian should account to a ward
for all profits made by investing or converting her funds, and,
if not authorized by the county court to invest the funds, will be
held for lawful interest, without regard to the profits made.

APPEAL from the district court for Gosper county:
ROBERT C. ORR, JUDGE. *Reversed with directions.*

*Francis G. Hamer, R. D. Stearns* and *Lafe Burnett,*
for appellant.

*O. E. Bozarth* and *Ritchie & Wolff, contra.*

ROOT, J.

This is an action for a judgment that the defendant
holds title to a tract of land as trustee for the plaintiff,
and for an accounting. The defendant prevailed in part,
and the plaintiff appeals.

There is some conflict in the evidence, but many
material facts are proved by undisputed evidence. In
October, 1904, the plaintiff, the widow of W. A. Scales,
who died in 1902, leaving the plaintiff and an infant
daughter, Gladys, him surviving, was married to the
defendant. Mr. Scales died seized of the land in dispute,
and with his wife and child occupied it as a homestead
at the time of his death. Walker Smith was guardian of
the property of Gladys Scales. The land was mortgaged
by Scales and wife to secure the payment of $900
borrowed money, and several interest payments were
unpaid in 1904.

The plaintiff, subsequently to her last marriage,
determined to bring about a sale of the land, so that the

proceeds might be divided between the owners in proportion to their interests. Having this purpose in view, the guardian and Mrs. Wilson consulted counsel, and were advised that the guardian might procure a license from the district court and sell the land, provided she would waive her homestead right. Thereupon the guardian made application to the district court for license to sell all of the 320 acres in dispute in this action, but before the proceedings were consummated Mrs. Wilson became insane, and March 27, 1905 was, by the commissioners for the insane in Gosper county, committed to the asylum near Lincoln, where she remained until paroled or discharged in 1908.

July 31, 1905, the mortgagee, at the guardian's request, commenced an action to foreclose the mortgage. There was personal service of summons on all of the parties in interest and upon the superintendent of the hospital for the insane where Mrs. Wilson was confined. Mr. Wilson, having been appointed guardian of his wife's estate, answered for her, contending solely for the value of her dower estate and for the amount of a claim allowed in her favor against the estate of her deceased husband, Scales. A guardian *ad litem* was appointed for the infant and for the insane woman, but the record does not disclose whether he answered for his wards. The decree finds the amount due the mortgagee, the amount of taxes paid, the present value of Mrs. Wilson's dower estate, and that she was entitled to her claim against the Scales' estate. At the sheriff's sale the defendant purchased the land for $5,675, a greater sum than the land was worth, if we should believe the undisputed testimony on this point. After sale, but before confirmation, Mr. Wilson, having been elected sheriff of Gosper county, assigned his bid to Mrs. Bozarth, wife of his present counsel, and in her name the sale was confirmed, and to her a deed was made. In the order of confirmation the court directed the proceeds of the sale to be distributed as follows: To the mortgagee, $1,201.55; for costs,

$120.65; for taxes, $46.53; for the guardian *ad litem*, $5; to Mrs. Wilson or to her guardian, $500 in lieu of her dower, and $419.73 in satisfaction of her claim against the Scales' estate; the remainder of the $2,500 to Mr. Smith, as guardian for Gladys Scales; and the notes for the remainder of the purchase price were ordered to be made payable to her and delivered to her guardian. All of which was done.

In this action the district court adjudged that the plaintiff should recover her dower and a homestead estate in the land, but burdened with a lien for $1,114.79, of which sum $458.36 was made a lien on the homestead and dower estate, and $656.43 a lien solely upon the dower estate. We are advised by the arguments, but not by the record, that the district court took an accounting for rents and profits and for taxes paid, and carried the balance into the decree. The defendant in his answer, among other things, pleaded that there had been an accounting in the county court in the matter of his guardianship of his wife's estate, and that subsequently that contention was appealed to the district court, where it was pending, and that in those proceedings he was pursued for the money held by him in lieu of his wife's dower interest in the land and for the rents and profits of the land in dispute. It has also been brought to our attention that the record of those proceedings has been lodged here on appeal, and that it is contended that by some chance the bill of exceptions of the evidence adduced during the trial is incomplete, to the prejudice of Mrs. Wilson.

It is, of course, elementary law that the ward may, at her election, accept the price paid by her guardian for her property or recover the property itself, without regard to the motives which impelled him to act or whether there was active fraud in the transaction. *Michoud v. Girod*, 45 U. S. *503; *Veeder v. McKinley-Lanning L. & T. Co.*, 61 Neb. 892; *Kazebeer v. Nunemaker*, 82 Neb. 732. The guardian also will hold as trustee, for the benefit of

his ward, the title to any property he may have purchased with her funds.

There is evidence tending to prove that the plaintiff's money entered into the cash payment of $2,500 at the sheriff's sale, although the defendant denies that fact. The cross-examination on this point was not pressed, and we are not entirely satisfied with the disclosure, but, for the purposes of this case, shall treat the subject as though his funds were solely used for that purpose. Approaching the controversy from this standpoint, we are not satisfied that the defendant should be permitted, over his ward's objections, to retain title to this land. The relations between these parties are the most confidential known to man. The defendant, by virtue of his marital obligations and his duty as the plaintiff's guardian, owed her the highest duty to conserve her property, and the law will not permit him to use either his wife's funds or his position to secure the slightest advantage to her detriment. Her dower and homestead estates had not been admeasured, but were involved with the remainder vested in her infant daughter. The defendant's contention that he owns the land by a title in fee simple makes his interests conflict with those of his ward, and places him in an attitude the law will not permit him to assume. As guardian, the defendant possessed ample funds to redeem the land or to purchase the incumbrance. Of course, he could not thus invest those funds without an order of the county court, made upon formal application, and it is true that his wife, while sane, expressed an aversion to having her estate invested in the land; but the experience of ages has demonstrated that trust funds are rarely so secure as when judiciously invested in well-secured real estate mortgages or in improved farms, and the defendant would be in much better position if he had presented the subject for the determination of that court. Having elected to purchase, rather than to otherwise protect the estate of his ward and wife, we think she has the right, upon equitable terms, to accept

and receive the benefits attendant upon that transaction. 1 Perry, Trusts and Trustees (6th ed.) secs. 427, 428.

The defendant contends that the plaintiff, by pursuing him in the guardianship proceedings for an accounting, elected to recover her funds, and thereby waived any right to recover title to the land. The plaintiff has a right to a strict accounting to ascertain the amount of her property received by the guardian. When the exact amount due her is thus ascertained, should she accept the balance with knowledge of the sources from which the money came, she would be within the rule announced in *Borcher v. McGuire*, 85 Neb. 646.

In the first instance the county court had exclusive jurisdiction to settle that account, but by appeal the subject matter could be presented to the district court. This has been done. When the district court acquired jurisdiction of the controversy, it seems to us that case and the instant one should have been consolidated, to the end that a decree protecting all of the parties in interest should be made. As it is, we are met with contentions that the value of the rents and profits of the farm and the dower estate were considered in both cases, and those contentions are denied. The fragments of the one record offered as evidence in the other do not satisfy us concerning the actual fact, although they are doubtless sufficient for counsel duly advised by other evidence.

It is important that the court should have a complete disclosure of the source of the $2,500 cash payment made by the defendant at sheriff's sale. If it be true that this was his own money, not advanced by some person on the credit of the money in his hands as guardian, he should be credited on the accounting with interest on the sum so paid; but, if any portion of such payment was made up of money or credits of his ward, such portion should be deducted from the $2,500, and he would be entitled on the accounting to interest on the remainder.

We shall sustain the plaintiff's contention that the defendant holds title to this land in trust for her; but,

concerning her contention that he should be held for damages because her homestead exemptions were not preserved in the foreclosure action, we have to say that the mortgage was a lien on every estate in the land, and the sale, had it been made to a third person, would have vested the purchaser with all of the title of all of the parties to the action. The court did not rely on the defendant to protect the plaintiff's interests, but, by appointing a guardian *ad litem* for her, took this matter out of Mr. Wilson's hands. The defendant paid full value for the land; the plaintiff's daughter received the equivalent of the plaintiff's homestead estate, and we find nothing in the record to suggest that he intended to prefer his stepdaughter to his wife in the foreclosure case. We discover no such evidence of bad faith on his part as will justify a court of equity mulcting him in damages for this phase of the foreclosure case.

The case involving the guardian's accounts will be advanced and reversed, without a decision on the merits, to the end that it may be consolidated with this action for trial. The district court will determine from the record, and such other evidence as the litigants may offer, the true state of the accounts between the litigants. The defendant should be credited with all of the money paid by him on the purchase price of the farm, including what he has paid on the mortgage debt and for taxes and improvements, with 7 per cent. simple annual interest on those payments; he should be charged with the fair value of the rents and profits of the farm, with like interest, and the district court should decree that if the plaintiff, within three months thereafter, will pay to the defendant the difference between the aggregate of those credits and debits, the defendant shall execute a deed of conveyance to her for all of the real estate, and if the deed be not made the decree will operate as a conveyance.

In the matter of the guardianship accounting, should it appear that the defendant directly or indirectly profited by the possession or use of his ward's funds,

either by investing them in the land in dispute or by receiving interest thereon, he shall be charged with as high a rate of interest thereon as he has received, but not less than 7 per cent., or, if the money was invested in the land, .7 per cent. simple annual interest, less taxes paid and lawful charges against the fund, whether by payments of accounts, costs, expenses or compensation allowed by law.

JUDGMENT ACCORDINGLY.

The following opinion on motion to modify former opinion was filed January 3, 1912. *Motion overruled:*

PER CURIAM.

The defendant requests a modification of the opinion, so the district court may not require him in the guardianship proceedings to pay the balance of funds due his wife, with interest, and, also, in the instant case give her credit for those funds on the purchase price of the farm. We do not think it possible that the district court will make such orders. It was to prevent any such injustice that the two causes were ordered consolidated. It is suggested that the plaintiff might, by immediately collecting the balance due her from her guardian and by delaying to the last day the exercise of her option to take the farm, secure an advantage over the defendant. We have no doubt that the decree of the district court will fully protect the defendant in these eventualities, none of which can arise if his testimony on the former trial, that he invested none of his wife's money in the land, be true.

The motion is

OVERRULED.