## GARFIELD OIL CO. et al. v. CREWS et al. EXCHANGE OIL CO. et al. v. SAME.

Nos. 15947, 15948, Consolidated. Opinion Filed Sept. 20, 1927.

Rehearing Denied Jan. 8. 1929.

Edw. H. Chandler, Summers Hardy, Wm. O. Beall, B. B. Blakeney, J. H Maxey, and Robert L. Imler, for plaintiffs in error.

W. W. Sutton, for defendants in error.

LESTER, J. On September 10, 1921, Ralph Crews and Charlie Crews, adults, and L. E. Crews, guardian of Robert Crews, Everett Crews, Mary Crews, and Amie Crews, filed an action in the district court of Garfield county against the Exchange Oil Company, a corporation, praying the cancellation of the undeveloped portion of an oil and gas lease covering 240 acres in Garfield county, bearing the date of February 21, 1916, and executed by L. E. Crews, as guardian of Ralph Crews, Charlie Crews, Robert Crews, Everett Crews, Mary Crews, and Amie Crews, minors, as lessors, and B. A. Garber, as lessee.

There had been several assignments of said lease, and on the date of the filing of said action the said lease was then held by the Exchange Oil Company. On October 26, 1921, a default judgment was entered against Exchange Oil Company, and on March 17, 1922, said judgment was vacated.

On March 28, 1922, the Garfield Oil Company and the Sinclair Oil Company were made parties defendants in said action by the filing of an amended petition. In the amended petition the plaintiffs sought the cancellation of the oil and gas lease of February 21, 1916, alleging: First, that the oil and gas lease was void and invalid from the date of its execution, on account of the failure of the county court of Garfield county to comply with rule 9 of the Supreme Court of Oklahoma in the sale of said lease, which rule was promulgated June 11, 1914, and effective July 15, 1914. Second, that the defendants had failed to develop certain portions of the land covered in said lease.

On July 17, 1922, the plaintiffs filed a second amended petition. The material allegations of the same were similar in their nature to the first amended petition. The second amended petition, however, recited that Robert Crews had attained his majority since the filing of the amended petition.

The defendants filed demurrers to the petition of the plaintiffs, and each of the demurrers was by the court overruled, to which the defendants duly excepted.

The defendants filed answers to the second amended petition of the plaintiffs, and in which they set forth several defenses to the same.

Sinclair Oil & Gas Company also in their answer pleaded a counterclaim or cross-petition, alleging the wrongful entry upon the portion of the premises by the plaintiffs and wrongful development thereof in production of oil and gas therefrom.

The plaintiffs thereafter filed replies and answers to the pleadings of the defendants.

On the 17th day of March, 1924, the cause came on for trial, and on July 26, 1924, the trial court made and filed its journal entry, wherein, among other things, it adjudged that the oil and gas lease of February 21, 1916, was void ab initio and decreed the cancellation of the same. The court also rendered a money judgment against the several defendants for different amounts.

The defendants have prosecuted their appeal to this court for the purpose of reversing said judgment.

The plaintiffs in error at page 49 of their brief, under the caption "Foreword," say:

"Owing to the fact that the defendants, the Garfield Oil Company and Exchange Oil Company, in the trial court appear in the proceedings in error in this court as both plaintiffs in error and defendants in error, by virtue of the order of the court of December 16, 1924, consolidating causes No. 15947 and No. 15948, and directing the filing of joint briefs, the parties will be referred to throughout this brief as they appeared in the trial court."

This court will follow the same rule and refer to the parties as they appeared in the trial court.

The defendants have assigned a very large number of errors of law occurring in the determination of the case below, but at page 50 they state in substance six propositions to obtain a reversal in said cause, and we will undertake to dispose of these propositions in the order named in the defendants' brief.

The first proposition presented by the defendants' brief is that the oil and gas lease executed by and between L. E. Crews, guardian, as lessor, and B. A. Garber, lessee, is, in all respects, valid and binding.

The records of the county court of Garfield county show that on the 21st day of February, 1916, L. E. Crews, as guardian, presented to the county court of Garfield county, Okla., an application for authority to lease the real estate of her wards for oil and gas purposes. On the same date, to wit, the 21st day of February, 1916, the county court of Garfield county, Okla., issued its order authorizing said L. E. Crews, as guardian, to execute and deliver an oil and gas lease on the real estate of said minors to B. A. Garber.

Also on the same date, to wit, the 21st day of February, 1916, the county court of said county approved a lease entered into by and between said L. E. Crews, as guardian of said minors, and B. A. Garber, the approval by the county court being in the following language:

"On the 21st day of February, 1916, the above and foregoing lease was presented to me by L. E. Crews, guardian of Ralph, Charlie, Robert, Everett, Mary and Amie Crews, minor children of James A. Crews and Lula Crews, deceased. Upon consideration thereof and the evidence offered, the court therewith in all things approves said lease."

The validity of the lease in question must be determined by rule 9 of the Supreme Court of Oklahoma, which rule was promulgated June 11, 1914, and effective July 15, 1914, said rule being as follows:

"No oil and gas, or other mineral lease, covering lands belonging to minors or incompetents, will be approved except after sale

in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed at least five (5) days before the same are sold as provided herein and notice of such sale must be given by posting and by publication where publication is practicable, and shall on_____of each_____.''

In the case of State ex rel. Freeling, Attorney General, v. Kight, 49 Okla. 202, 152 Pac. 362, is to be found an interesting and able discussion relating to the rules adopted by the Justices of the Supreme Court June 11, 1914, and effective July 15, 1914. In that opinion it is stated:

"The authority of the Justices of this court to adopt the rules in question is contained in section 5347, Rev. Laws 1910, which is as follows: 'The Justices of the Supreme Court shall meet every two years during the month of June, at the capital of the state, and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this Code, and shall make such further rules consistent herewith as they may deem proper. The rules so made shall apply to the Supreme Court, the district courts, the superior courts, the county courts, and all other courts of record.'

"This statute was originally taken from Kansas, and has been considered several times by the Supreme Court of that state. At the time of the revision of the Code of 1910, minor changes were made in the language of the act, but in all substantial particulars it is the same as originally adopted; and, under this section, rules prescribed by the Supreme Court of Kansas have been sustained which regulated the procedure in the inferior courts of that state. Jones v. Menefee, 28 Kan. 437; Robitaille v. Furguson, 4 Kan. 556; Halford v. Coe, 4 Kan. 561; Coleman v. Newby, 7 Kan. 82 (by a divided court).

"By the language of this section, the Justices of this court are given the authority to revise their general rules and make such amendments thereto as may be required to carry into effect the provisions of the Code, and to make such further rules, consistent therewith, as they may deem proper, and said rules, when so made, apply to all courts of record in this state. Said rules were of the kind and character authorized to be made by said section, and were not unreasonable nor in conflict with the statutes of this state, and it is expressly declared that said rules shall apply to the county courts within this state. The effect of the rules, when adopted by an appellate court and prescribed to govern procedure in inferior courts, has frequently been passed upon by the courts, and invariably held to be binding, and the question does not seem to us to admit of any controversy or argument.

"The rule is stated thus in 6 Stand. Ency. Pro. p. 63: 'Rules have the force and effect of law, and are binding upon litigants, and upon counsel, upon the court and its officers. A rule made pursuant to statutory authority by an appellate court to govern the procedure in inferior courts is binding upon the latter, and rules adopted by a board or convention of judges are binding on the individual judges.'

"And in the notes of this text are cited a great number of cases from many states in the Union. In fact, we do not know of any case where an appellate court is given authority by statute to prescribe rules regulating procedure in inferior courts which holds that such rules are not binding, or that the inferior court may disregard or set aside said rules. The same rule is announced in 18 Ency. P. & P., p. 1271, as follows: 'Although courts may sometimes dispense with the requirements of their own rules, it is uniformly held that they have no such power in regard to rules prescribed for them by a higher court'."

It seems to be conceded that, if the county court acquired jurisdiction of the parties and of the subject-matter at the time the lease was executed, a mere irregularity in the proceedings would not defeat the lease. but, on the other hand, if rule 9, supra, had the force and effect of a statute and the court failed to acquire jurisdiction to make the particular orders here involved, then its action is void, and hence the lease thereby becomes a nullity.

The attorneys for each side have brought to the attention of this court a very large number of cases bearing upon the question here involved.

It is insisted by the defendants that rule 9, supra, is a rule of procedure only. From an examination of rule 9 we find that it relates to three elements pertaining to the sale of an oil and gas lease: First, that such lease must be sold to the highest bidder in open court. Second, the petition for the approval of oil and gas leases must be filed five days before the same is sold. Third, relates to the character of notice to be given.

It is here contended that, while the record is silent as to whether there was competitive bidding, it must be presumed that the court followed the law and that there was competitive bidding in open court, and, therefore, the judgment of the county court cannot be collaterally impeached. Whatever force there may be to this question, we do not think it determinative or affects the second element contained in rule 9, to wit:

"All petitions for the approval of oil and

·gas leases shall be filed five days before the same are sold as provided herein."

The rules of the Supreme Court adopted June 11, 1914, did not state whether competitive bidding should be oral or in writing, nor did the rule fix the exact date or the hour of such bidding. Under rule 9, certainly all parties who desired to bid on said leases would be entitled to such time between the filing of the petition for sale of such oil and gas lease until within a reasonable hour before such sale to submit bids thereon. This right and permission of prospective bidders inhered to the highest interest of the minors, and plainly this was the very purpose of rule 9 that such an opportunity be given to prospective bidders.

· Counsel for the defendants in an able manner attempt to draw a distinction between the instant case and other cases decided by this court and herein discussed and which involved rule 9, supra.

We have read all the cases heretofore decided by this court bearing on rule 9 and we find that the facts contained in said cases are not wholly identical with the facts in this case; however, it must be noted that but very few cases of great importance present wholly identical facts, but many do present sufficient similarity that when well-known and established principles of law are applied, it is not difficult to determine the result.

Counsel for the defendants cite many cases in which they seek to show that the lease in question is valid, but none of these cases deal with rule 9, supra. It is our purpose here to point out the leading cases by this court involving rule 9, supra.

In the case of Carlile et al. v. National Oil & Development Co. et al., 83 Okla. 217, 201 Pac. 377 (rehearing denied by this court October 11, 1921), this court said:

"It is contended that no rule of procedure or statute relating to procedure can deprive a court of jurisdiction. This is perhaps a correct statement of the law, but a rule of procedure or the statute relating to procedure simply prescribes how and when a court may exercise the jurisdiction conferred upon it. The county court has jurisdiction over the estates of minors, but the different sections of the statute relating to procedure prescribed when and how the court must exercise that jurisdiction. This court is committed to the rule, if the statute relating to procedure is mandatory, the court must substantially comply with the provisions thereof. Whether the statute is mandatory or directory must be determined from the reading of the statutes themselves, and the intent of the framers, when ascertained, must control.

"Bearing in mind that section 2, article 7, of the Constitution, and section 5347, Rev. Laws 1910, conferred upon the Justices of the Supreme Court power and authority to promulgate rules regulating procedure in probate matters, and that this court has held that such rules, when promulgated, had the force and effect of statutes and were binding upon the inferior courts, in determining whether the rules were intended by the court to be mandatory or directory we must be governed by the same rule of construction that is applicable in construing statutes, and the intention of the framers thereof, when ascertained, must control.

"There is another rule applicable, and that is announced in the case of Harper v. Victor, 212 Fed. 903, where the court states as follows: 'A statute should receive a rational, sensible interpretation, one which tends to avoid or remove the mischief at which it was leveled and to accomplish the object sought by the legislative body which enacted it, rather than one which promotes or permits the evil and avoids the accomplishment of the purpose of the enactment.'

"With this principle in mind, let us consider the reason or apparent reason, if any, for adopting rule 9. In the year 1914, when rule 9 was adopted, this court consisted of practically the same members as when the opinion in the case of Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, was adopted, and the court upheld a sale of oil and gas mining lease in the absence of fraud, where a petition was filed for the sale of an oil and gas lease and on the same day the court made an order authorizing the guardian to sell an oil and gas lease to the highest and best bidder, and on the same day the guardian reported that he had sold a lease upon the land and on the same day the court approved the sale. It is very apparent the court did not consider this procedure a sufficient protection for the minor, as the proceedings might all be consummated within an hour's time and no one except the party interested would have knowledge that valuable oil rights of the minor were being offered for sale. Prospective purchasers would have no opportunity to bid, and in this manner the rights of the minor would not be protected and his property would be disposed of at a very inadequate consideration. To avoid this vice and to avoid the evil effects of such proceedings, the court adopted the rules. Why did the court deem it necessary that it be sold to the highest and best bidder? In order that the minor's rights be protected and he receive a just compensation for his property. The rules were no doubt promulgated to prevent just what occurred in the case at bar, to wit, the alleged sale of a valuable lease worth $15,-000 for the sum of $100. The requirement

that the petition be on file a certain length of time and that the sale be in open court, with an opportunity for every one to bid, was promulgated by the court for the protection of the minor. As was said in the case of Mobbs v. Millard, 106 Ark. 563, 153 S. W. 821: 'The requirement that no real estate of any minor shall be sold for less than three-fourths of its appraised value was passed for his protection pursuant to a general principle of public policy for the protection of the minor'."

The court in syllabus, parags. 5, 6, and 8, of said case also announced the following rules:

"5. The rules of the Supreme Court relating to probate procedure promulgated June 15, 1914, by virtue of section 2, article 7, of the Constitution and section 5347, Rev. Laws 1910, are binding upon the county courts of this state and such courts and judges thereof are without power to dispense with the requirements of such rules, to vacate and set the same aside, or to prescribe other rules in lieu thereof or in conflict therewith.

"6. The rules of court made pursuant to statutory authority of an appellate court to govern the procedure in inferior courts have the force and effect of law and are binding upon litigants and upon counsel, and upon the court and its officers.

"8. A statute should receive a rational, sensible interpretation, one which tends to avoid or remove the mischief at which it was leveled and to accomplish the object sought by the legislative body which enacted it, rather than one which promotes or permits the evil and avoids the accomplishment of the purpose of the enactment."

In the case of Winona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac. 981 (rehearing denied October 25, 1921), this court, again speaking on the subject of rule 9, supra, said:

"It was contemplated by the decision in the Duff v. Keaton Case, and the subsequent decisions in this court where the question of oil and gas mining leases was involved, and by rule 9, that the proceedings relating to the sale of an oil and gas lease should be by a petition setting up jurisdictional facts that would authorize the court to order a sale of an oil and gas mining lease upon the premises; second, a hearing upon said petition; third, an order of the court in proper cases authorizing the guardian to sell a lease; fourth, the advertising of said lease for sale, and the sale of said lease by the guardian in open court to the highest and best responsible bidder; and fifth, return of the sale and confirmation of the sale by the court."

In the case of Tidal Oil Company v. Flanagan, 87 Okla. 231, 209 Pac. 729 (rehearing denied October 17, 1922), this court, again referring to rule 9, supra, said:

"Counsel in the oral argument, or in the brief, have not pointed out any statute authorizing the title or an interest in such lands to be acquired in the manner as disclosed by this record. It is true, the guardian of an incompetent or minor may lease the lands of his ward for oil and gas purposes in the manner prescribed by law and under the rules of this court, which have been held to have the force and effect of a statute where the same is not in conflict with a statute. Winona Oil Company v. Barnes, 83 Okla. 253, 200 Pac. 981; Carlile et al. v. National Oil & Development Co. et al., 83 Okla. 217, 201 Pac. 377. Our attention has not been directed to any statute authorizing the making of such compromise agreements as the record discloses were entered into in the instant case."

In the case of Cosden Oil & Gas Co. v. Hendrickson et al., the court in syllabus, paragraph No. 1, said (96 Okla. 206, 221 Pac. 86):

"The Supreme Court of this state, by virtue of section 2, art. 7, of the Constitution, and section 5347, Revised Laws 1910, promulgated on June 15, 1914, rule No. 9, governing procedure in the sale of oil and gas mineral leases upon the land of a minor, and, though the state Legislature thereafter conferred upon the county courts the power to make their own rules, in the absence of any rule or statutory provision superseding the said rule No. 9, its directions must be followed; and any agreement or contract entered into in violation of the provisions of such rule is void."

In the body of the same opinion, we find the following language:

"Primarily, the position of the plaintiff in error is not a meritorious one. The case of Winona Oil Co. v. Barnes, 83 Okla. 218, 200 Pac. 981, and the case of Carlile et al. v. National Oil & Development Co. et al., 83 Okla. 217, 201 Pac. 377, unequivocally commit the courts of this jurisdiction to the holding that when an agreement is made for the leasing of a minor's land for mineral purposes, be it the original agreement or a so-called extension, and in the absence of procedure prescribed by statute, such an agreement must be in conformity with court rules of procedure, or it is as void as though never made.

"On June 15, 1914, there having been no statutory enactment for procedure in such cases, this court promulgated its rule No. 9, definitely establishing a reasonable course of procedure to protect the best interests of the minor. Both of the above-cited cases turned directly upon the said rule No. 9, and are authority for the right of the court to prescribe such rules and their application."

In the case of Carlile et al. v. National Oil & Development Co. et al., supra, this court in speaking of the construction to be applied to rule 9, supra, stated:

"About the most definite thing that has yet been provided for is rule No. 9 of the Supreme Court, and even that has been accused of being indefinite, and we think, as do the attorneys for the defendants in error in this case, that the word 'approval,' used in said rule should be changed to 'sale', and that that is its inevitable meaning and has been so interpreted in actual practice. We hold it to be no infringement of the rule to have approval follow the sale immediately; and in actual practice the custom is to have the approval of the sale follow immediately after the sale. No petition for the approval being required, and petition for sale being a reasonable requirement, the requirement to have the petition for approval on file five days must inevitably mean the 'petition for the sale,' instead of the 'petition for approval.'"

From the cases just cited it clearly appears that rule 9 has the same force and effect of a statute, and it further appears from rule 9 that no sale can be made until the petition has been filed five days prior to the said sale. In the instant case no effort was made to comply in any manner with rule 9, supra, and we, therefore, hold that the lease was wholly void.

The second proposition urged by the defendants is that the record shows that Ralph W. Crews, Robert Crews, and Charlie Crews accepted the proceeds for the royalties paid under the lease and otherwise recognized the validity of the same, and, therefore, adopted and ratified its terms, and that they are estopped from asserting its invalidity.

We find from the record that Ralph W. Crews reached the age of 21 years February 10, 1918. On April 17, 1918, said Ralph W. Crews joined with L. E. Crews in the execution of a division order to the Sinclair Oil & Gas Company. On April 24, 1918, said Ralph W. Crews and L. E. Crews, as guardian, delivered to the Sinclair Oil & Gas Company a written instrument in which the following, among other statements was made:

"Your company had an oil and gas lease on said real estate and oil is being produced. We desire 1/8 of the oil as we have sold it to other parties. Please deliver to us, as per our terms of the lease our part of the oil and we desire the oil from this time forward."

Said Ralph W. Crews after his majority accepted proceeds from time to time from said lease.

On about the 11th day of January, 1921, said Ralph W. Crews made final settlement with his former guardian, L. E. Crews, and received from her the sum of $5,253, the major portion thereof being royalties received from said lease. Charlie Crews attained his majority January 7, 1920. On about the 11th day of January, 1921, said Charlie Crews made his final settlement with his former guardian, L. E. Crews, and received the sum of $16,867.89, which sum he still retains, said sum being the larger part of his proportionate share of the royalties which had accumulated under the oil and gas lease of February 21, 1916.

Robert Crews attained his majority June 21, 1922. On about the 17th day of July, 1922, Robert Crews made final settlement with his former guardian, L. E. Crews, and received from her the sum of $20,991.84, which sum he still retains, the larger portion thereof being his proportionate share of the oil and gas royalties, which had accumulated under the oil and gas lease of February 21, 1916.

It is further shown in the record that Ralph W. Crews and Charlie Crews had personally authorized agents, from time to time, to file in the State Auditor's office at Oklahoma City, Okla., reports, duly verified, showing the amount of royalties received from the lands covered by the oil and gas lease in controversy.

In the case of Lasoya Oil Co. v. Zulkey, 40 Okla. 690, 140 Pac. 160, Ada Zulkey, after she became of age, commenced an action to cancel an oil and gas lease between the guardian and the lessee. It appears that the right to maintain the action was sustained, and it was also held that on account of reaching her majority she made settlement with her guardian in which he accounted to her for all the benefits obtained under the lease, after she was in possession of full information concerning all the facts, and she thereby ratified the same. In that case this court quoted from the case of Penn v. Heisey, 19 Ill. 296:

"The application of this principle does not depend * * * upon any supposed distinction between a void and voidable sale. If the sale be the one or the other, receiving the money, or its proceeds in other valuable property, with knowledge of the facts, touches the conscience of the party and therefore establishes the right of the party claiming under such sale, in one case, as well as in the other."

In the case of Kulp v. Heimann, 90 Neb. 167, 133 N. W. 206, the court said:

"The plaintiff's main contention is that the district court, by reason of certain defects

or irregularities in its proceedings, had no jurisdiction to make the order for the sale of the land in question; that the sale through which the defendants derived their title was void, and therefore she should have had the judgment. We may say, in passing, that it is probable that the matters upon which plaintiff relies to deprive the district court of jurisdiction to make the order were mere irregularities; but we are not required to pass upon that question, for we are of the opinion that our decision must be ruled by Borcher v. McGuire, 85 Neb. 646, 124 N. W. 111, where practically the same questions were involved as those now presented for our determination.

"It appears that the plaintiff and the other heirs of the testator, after they attained their majority, with the consent and aid of the county court of Cuming county, settled with their guardian, accepted that portion of the proceeds of the sale of their land then in his hands, and consented to his discharge. The record in this case contains the following finding or conclusion made by the trial court: 'The court further concludes, as a matter of law, that plaintiff, by reason of her knowledge at the time of her final settlement with her guardian that the moneys she received at said time were part of the proceeds of the sale of the land in controversy, and having elected to accept the money, is now estopped from claiming the land.' The rule is well settled that in an action at law the findings of fact made by the trial court will be sustained, unless it appears from the evidence that they are clearly wrong. It is shown by the evidence in this case, beyond question, that plaintiff settled with her guardian and accepted her share of the proceeds of the sale of the land which is now the subject of this controversy. She was a well-educated person, and was possessed of more than the average intelligence. She testified, among other things, that she knew, in a general way, what land her father had when he died, that she thought of it at the time she got her money, and that she knew the land in question had been sold. * * *

"Without quoting any more of the evidence, we think it may be said that it was sufficient to support the findings of the district court. This brings the case clearly within the rule announced in Borcher v. McGuire, supra, where it was held that the acceptance of his distributive share by a ward from his guardian of an estate, and a request for his discharge, in the absence of fraud or misrepresentation, amounts to a ratification of the guardian's acts; that, if the ward has knowledge that a portion of the fund received by him was the proceeds of the sale of his land. this would be a ratification and affirmance of such sale, and it would make no difference whether the sale proceedings were regular, voidable, or void."

. In the case of Carlisle et al. v. National Oil & Development Co. et al., 108 Okla. 18, 234 Pac. 629, (rehearing denied March 31, 1925), this court in syllabus paragraphs Nos. 1 and 2, said:

"1. A person who, with full knowledge of the facts, at a time when he is fully competent and capable to contract for himself. accepts the benefits accruing under the void contract, adopts the contract and is estopped to deny the validity thereof.

"2. Where an oil and gas lease was void because it was not executed in accordance with rule 9, but the minor after reaching his majority, with full knowledge of the facts, made a voluntary settlement with his guardian, receiving from him the benefits which had accrued under the void contract, and continued to accept the rentals and royalties accruing thereunder, the finding of the trial court that the void contract had been adopted is supported by sufficient evidence."

In the body of said opinion, supra, the court said:

"In all of the cases referred to, however, the parties were denied relief because they had accepted the benefits of the contracts, whether void or voidable, with full knowledge of the facts and at a time when the party so accepting was under the law fully competent and capable of contracting for himself. It therefore does not matter whether the transaction be referred to as an adoption, ratification, or estoppel, as the effect of those holdings, taken together, is to prevent a party from asserting the invalidity of a contract when such party has accepted the benefits of the contract with the full knowledge of the facts.

"It is our opinion that the acts of Levi Carlisle were such as to show an intentional acceptance of the benefits of the contract with full knowledge of the facts at a time when he was competent and capable of making a contract, and therefore constituted an adoption of the contract. * * *

"Any act of the minor in conveying the property to others or in filing a suit for the cancellation of the contract would render the contract no more void than it already was. In the instant case, since the contract was void and had to be adopted instead of ratified, the previous acts of the party in attempting to cancel the contract or convey the property to other persons would not prevent an adoption of the contract by him provided the rights of other persons had not intervened so as to prevent such adoption."

In Lee v. Gardner, 26 Miss. 521, the court said:

. "The heirs of the deceased having ratified and acquiesced in the sale and received their portion of the proceeds, they are estopped from denying the validity of the sale."

And further in the opinion it was said:

"But if it was void as to the heirs of the deceased, as is stated, it is shown by the evidence to have been acquiesced in and ratified by them, and that they received their portion of the proceeds. This would estop them from denying the validity of the sale. thus all interests were satisfied and the validity of the sale * * * placed beyond successful controversy."

In Willie v. Brooks, 45 Miss. 542, the court says:

"If the heir received by distribution the purchase money of land of the ancestor sold under a void decree of the probate court, it is the settled doctrine * * * that as to an adult heir such receipt is an estoppel from contesting the title."

We think that the record clearly indicates that when each of the three minors, who thereafter reached their majority, accepted the benefits of said lease, they were cognizant of all the facts relating thereto.

The proceedings of the guardian in the sale of said lease were a matter of public record which brought notice to all parties. It would be manifestly unjust to charge the various assignees with the record in the county court, and on the other hand fail to give full import which said proceedings imparted to the three adult plaintiffs in this case, who accepted benefits from said lease and who were charged with full knowledge of all the facts relating to sale of said lease.

We hold that Ralph W. Crews, Charlie Crews, and Robert Crews, after they became of age and were cognizant of all the facts relating to said lease, and having accepted benefits therefrom, they adopted the same and, therefore, cannot recover.

The third proposition presented by the defendants is that the court committed error in rendering a judgment against the defendants on the basis of an advance market price over the price received by the operators in the possession of the lease. We do not think that the court committed error in fixing the basis of recovery in this case, and, therefore, refuse to disturb the findings of the trial court on the third proposition urged by the defendants.

The fourth proposition presented by the defendants is that the court committed error in not sustaining demurrers against the first and second amended petitions, and the defendants urge that the allegations in said petitions were inconsistent and contradictory. From an inspection of the petitions against which the defendants lodge their complaint it is seen that the plaintiffs urged. first. that

the lease was wholly void for the reason that no effort was made to comply with rule 9 of the Supreme Court; second, that if the court should find that the lease was not void, then the terms had been broken as to the undeveloped portion of the said lease, and the plaintiffs would be entitled to recover on that account.

We think the plaintiffs' petition states but one cause of action. The second proposition or theory of the plaintiffs was plainly in the alternative, and this character of pleading is permitted in furtherance of justice.

The fifth proposition presented by the defendants is the error of the court in refusing to make certain findings of fact and conclusions of law thereon. We think that under the issues formed by the pleading and the evidence adduced thereunder the findings of fact and conclusions of law as rendered by the court reasonably conformed to the requirements of the law.

The sixth proposition presented by the defendants relates to the statute of limitation as applied to the cause of action upon the part of the three adult plaintiffs heretofore referred to. Since we have held that these three plaintiffs by their acts adopted said lease, it is not necessary that we discuss the last-named objection upon the part of the defendants.

The judgment of the district court is affirmed in all respects as to L. E. Crews, as guardian of Everett, Mary, and Amie Crews, minors, and reversed as to Ralph, Charlie, and Robert Crews, with the following directions to the trial court: Said court will enter judgment in favor of L. E. Crews, as guardian of Everett, Mary, and Amie Crews, minors, against each of the defendants in which a recovery was had in the original judgment and deduct from the full amount of the original judgment the amount represented by the interest held in said judgment by Ralph, Charlie, and Robert Crews, and after deducting said amount, the court will then allow L. E. Crews, as guardian of Everett, Mary, and Amie Crews, minors, interest on the judgment so reduced from the date of the rendition of the original judgment at the rate of six per cent. until paid. together with all costs of the action. The court is also directed to dismiss the action as to the plaintiffs Ralph. Charlie, and Robert Crews.

BRANSON, C. J., MASON. V. C. J., and HARRISON, PHELPS, and HUNT, JJ., concur.