INDIAN LAND & TRUST CO, VS SHOENFELT, U S INDIAN AGENT, ET AL.

## Opinion delivered February 20, 1904.

1. *Guardian and Ward—Natural Guardians—Rights of, as to Ward's Lands*

   Under the common law the natural guardian has jurisdiction only of the person of the ward and cannot lease the ward's lands without an order of court, until appointment by the court and giving of bond.

2. *Guardian and Ward—Law Relating to in the Creek Nation.*

   At the time of the adoption of the Creek Agreement and Supplemental Agreement, the law as to guardian and wards in force in the Creek Nation was contained in Chap. 73 of Mansf. Dig. of Laws of Arkansas. This law was not changed by the Creek Agreement except that by Sec. 35 of the Agreement, it is provided that natural guardians may, in the discretion of the court, be permitted to administer the ward's estate without giving bond.

3. *Guardian and Ward—Leases of Lands—Invalid if Without Order of Court.*

   Under the provisions of Chap. 73 Mansf. Dig. and Sec. 35 of Creek Agreement, any lease of a ward's lands made by a guardian without the order or confirmation of the court is absolutely void.

4. *Indian Lands—Invalid Lease—Removal of Lessee by Indian Agent.*

   Under the provisions of the Supplemental Creek Agreement, of June 30, 1902, the U. S. Indian Agent under orders of Secretary of Interior, is authorized to protect allottees in their right to possession against any person claiming under any lease not made in conformity to law. A lease of a ward's land made by the guardian without the order or confirmation of court is not "obtained in conformity to law" and such lessee is liable to removal by the Indian Agent.

Appeal from the United States Court for the Western District.

CHARLES W. RAYMOND, Judge.

Bill in equity by the Indian Land & Trust Company against J. Blair Shoenfelt, United States Indian agent, and others. Judgment dismissing the bill. Plaintiff appeals. Affirmed.

*Preston C. West, William T. Hutchings,* and *Maxey & Rampendahl,* for appellant.

*William M. Mellette, U. S. Atty., E. L. Kistler, Asst. U. S. Atty.,* and *Arthur P. Murphy,* for appellees.

CLAYTON, J. On the 7th day of August, 1903, the appellant filed a bill in equity in the United States Court for the Western District of the Indian Territory against the appellees to enjoin the United States Indian agent from attempting to interfere with its possession of the land described in the complaint. The appellant was in possession of the premises under a contract entered into on the 30th day of August, 1902, between itself and Samantha Barnett, the mother, and Luke Evans, the stepfather, of Sally Hodge, a minor, and a Creek Indian, whose father was dead at that time. Said land was leased for agricultural purposes for a term of five years from the 1st day of January, 1903. A general demurrer was interposed by the defendants (appellees here), which was sustained by the court, and the bill dismissed for want of equity, from which action of the court this appeal is taken.

There are two questions presented in this case. They are: First, has the natural guardian of a minor Creek Indian, in the Creek Nation, the power to lease the land of his ward, without first having obtained an order of court for that purpose? And, second, has the Indian agent, acting under the authority of the Secretary of the Interior, the power to remove from the lands so leased the lessee, and put the minor allottee in possession?

It is conceded that at the common law the lands of a minor cannot be leased by the natural guardian without first having obtained the order of a court. By that law the natural guardian had jurisdiction only of the person of the ward. May vs Calder, 2 Mass. 55; Darby vs Anderson, 1 Nott & McC. 369; Ross vs Cobb, 9 Yerg. 463. A general guardian, at common

law, however, having been appointed by the court, and having given bond, may lease his ward's land without the order of the court. At the time of the adoption and ratification of the Creek agreemeet and the supplemental agreement, the law in force in the Creek Nation in this respect was contained in chapter 73 of Mansfield's Digest, entitled "Guardians, Curators and Wards." And it is provided by section 3465 (Ind. Ter. St. 1899, § 2361) that, "In all cases not otherwise provided for by law, the father while living, and after his death, or when there shall be no lawful father, then the mother, if living, shall be the natural guardian of their children, and have the custody and care of their persons, education and estates; and, when such estate is not derived from the person acting as guardian, such parent shall give security and account as other guardians."

The sections of the statute relating to the leasing of lands by guardians, either natural or general, are as follows:

"Sec. 3498 (2394). When any minor shall be the owner of any improved lands, it shall be the duty of the guardian of such minor, annually, to rent such lands to the highest bidder, giving ten days previous public notice of the time and place of renting the same.

"Sec. 3499 (2395). The guardian shall take bond and security for the payment of the rent, and that the tenant will not commit waste on the demised premises.

"Sec. 3500 (2396). If any ward be the owner of wild or unimproved lands, not connected with any cultivated or improved tract belonging to such ward, the guardian may, under the advice and direction of the court, let out such unimproved lands on improvement leases, not to exceed more than two years beyond the majority of such ward."

"Sec. 3502 (2398). The Probate Court shall order the proper education of minors, according to their means, and for

that purpose may, from time to time, make the necessary appropriations of the money or personal estate of any minor, and when the personal estate shall be insufficient, or not applicable to the object, upon application the court may order the lease or sale of real estate, or so much thereof as may be requisite, or that the same be mortgaged for not less than two-thirds of its real value, to raise the funds necessary to complete the education of such minor."

"Sec. 3509 (2405). When it shall appear that it would be for the benefit of a ward that his real estate, or any part thereof, be sold or leased and the proceeds put on interest, or invested in productive stocks, or in other real estate, his guardian or curator may sell or lease the same accordingly upon obtaining an order for such sale or lease from the court of probate of the county in which such real estate or the greater part thereof shall be situate.

"Sec. 3510 (2406). To obtain such order, the guardian or curator shall present to the court a petition setting forth the condition of the estate, and the facts and circumstances on which the petition is founded.

"Sec. 3511 (2407). If, after a full examination on the oath of creditable and disinterested witnesses, it appears to the court that it would be for the benefit of the ward that the real estate, or any part of it, should be sold or leased, the court may make an appropriate order for such sale or lease, under such regulations and conditions, subject to the provisions of this chapter in relation to the sale of real estate of minors, as the court shall consider suited to the case, first requiring the guardian or curator to enter into good and sufficient bonds to make such leases and conduct such sales with fidelity to the interest of his ward, and faithfully to account for the proceeds of such sales

and leases according to law and as the order of the court may require."

By section 3498 (section 2394), stated above, if that section stood alone, it would appear that a guardian might lease without an order of the court; but, when the other sections above set out are considered, it seems clear that no guardian, under that statute, can lease his ward's land without an order of the court; and this is conceded by appellant's counsel.   The only question on this branch of the case, then, is, has the Creek agreement and supplemental agreement, since enacted, so far repealed or modified the statute as to relieve the natural guardian from this duty of applying to, and obtaining an order of, the court, before leasing his ward's lands in the Creek Nation?

Section 35 of the Creek agreement (Act March 1, 1901, c. 676, 31 Stat. 871) provides:   "Parents shall be the natural guardians of their children, and shall act for them as such unless a guardian shall have been appointed by a court having jurisdiction; and parents so acting shall not be required to give bond as guardians, unless by order of such court, but they and all other persons having charge of lands, moneys and other property belonging to minors and incompetents, shall be required to make proper accounting therefor in the court having jurisdiction thereof in manner deemed necessary for the preservation of such estates."   The appellant contends that this section of the agreement so far repeals and modifies the provisions of Mansfield's Digest above set out as to relieve natural guardians from the duty of applying to the court, and securing from it an order for leasing lands.   But upon a careful reading of the section, and comparing it with the provisions of Mansfield's Digest, it will be seen that the only modification of the then existing law, as set out in Mansfield's Digest, is that a natural guardian may, in the discretion of the court, administer the estate without executing

bond. In all other particulars his duties are as they were before the enactment of the agreement; and, among these, the duty of the natural guardian to submit himself to the jurisdiction of the court, and to act under its direction, and procure its orders before leasing the lands of his ward, remains unrepealed. And therefore, in this case, the land having been leased by the natural guardian without any direction or order of the court having been asked for or granted, and no confirmation or ratification of the act of the guardian having been had by the court, the lease is void, and was "not obtained in conformity to law."

The power of the Secretary of the Interior, acting through his Indian agent, to remove the lessee from the lands so leased, seems to us to be clearly granted by the nineteenth section of the supplemental Creek agreement, approved June 30, 1902, c. 1323, 32 Stat. 504. It is as follows: "The Secretary of the Interior shall, through the United States Indian agent in said territory, immediately after the ratification of this agreement, put each citizen who has made selection of his allotment, in unrestricted possession of his land and remove therefrom all persons objectionable to him; and when any citizen shall thereafter make selection of his allotment as herein provided and receive certificate therefor, he shall be immediately thereupon so placed in possession of his land, and during the continuance of the tribal government, the Secretary of the Interior through such Indian agent, shall protect the allottee in his right to possession against any and all persons claiming under any lease, agreement or conveyance not obtained in conformity to law." The tribal government of the Creek Nation is still in existence. The minor in this case has been put in possession of his allotment, and the appellant has taken possession under a "lease not obtained in conformity to law." The provision of the agreement imposes the duty upon the Secretary of the Interior to keep the allotment clear from all such intrusion. He is to put

the allottee in possession, remove all persons objectionable to him, and, until the extinction of the tribal government, he is to "protect the allottee in his right of possession against any and all persons claiming under a lease not obtained in conformity to law." And as we have held that the appellant is claiming to hold under such a lease, the Secretary of the Interior may lawfully, and it is his duty to, put him off. It is the only way he can exercise his power and perform the duty imposed on him by the agreement.

The judgment of the court below is affirmed.

TOWNSEND, J., concurs. GILL, J., not participating.