Capps *et al.* v. Hensley.

No. 885, Ind. T.   Opinion Filed March 2, 1909.

(100 Pac. 515.)

1.  GUARDIAN AND WARD—Indians—Leases—Validity.  A lease, executed by a natural guardian who has not submitted himself or his actions to a court having jurisdiction, nor executed a bond, nor procured an order to lease, is void as to such infant, at his or the option of those who legally represent him.

2.  LANDLORD AND TENANT — Leases — Adoption.  Where, in such a case, after the death of the infant, the natural guardian, being the father and sole heir, recognizes the tenant holding thereunder by accepting from him the money for the rent of the premises, such action on his part will constitute an affirmance

or adoption of the contract, and create of it a binding and enforceable obligation between them.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory, at Muskogee; William R. Lawrance, Judge.*

Ejectment by Gertrude Hensley against James R. Capps and others.  Judgment for plaintiff, and defendants appealed to the United States Court of Appeals of the Indian Territory, whence the cause was transferred to the Supreme Court of the state of Oklahoma.  Reversed and remanded.

This is an action in ejectment, brought by Gertrude Hensley as plaintiff against James R. Capps, Coley Capps, and A. Jack Howard, defendants, in the United States Court for the Western District at Muskogee.  The case was tried before the court without a jury on the pleadings and an agreed statement, which presented substantially the following facts:  On August 23, 1902, Gertrude Samuels was the only child of James Samuels and her mother, Nellie Samuels, and was a minor of about 12 years of age.  These people were Creek freedmen.  On that date an agricultural lease was made by the father, as natural guardian of the land and allotment of his said child, to Anthony Crafton, for a term of five years, which lease was afterwards assigned to the Muskogee Development Company, which was the owner of the same, at the time of the institution of this action.  This lease was not approved by any court, nor recorded until the 9th day of January, 1905.  The said minor child, Gertrude Samuels, died February 14, 1903.  The agreed statement of facts then states that "after the death of the said Gertrude Samuels, the said James Samuels continued to receive the rents from the lessees of said premises."  Then follows a statement showing that there was paid by the said lessees, and received by said James Samuels, on March 6, 1903, $100; March 7, 1903, $5; September 4, 1903 $5; September 28, 1904, $20.  The allotment deeds to the lands were issued by the Principal Chief of the Creek Nation on the 5th day of August, 1904,

and approved by the Secretary of the Interior on the 9th day of September following, and were delivered to James Samuels on the 1st day of April, 1905. The controversy out of which this suit arose grew out of the sale of this land by the father and mother, who conveyed by warranty deed on September 1, 1904, the east half of the quarter section to the plaintiff, Gertrude Hensley. At the time of the said conveyance Howard and Capps, two of the defendants were in possession of the land as tenants of the holders of the lease. The grantee under the deed knew that they were in possession, but did not know whose tenants they were. On the 4th day of April, 1905, the said grantors conveyed by a quit claim deed, to the plaintiff, the whole quarter section above described, and at the time of receiving this deed she knew of the lease executed to Anthony Crafton, and the assignment thereof. The plaintiff has not demanded, nor have the lessees paid, any rent to her for the land. The only lease executed or delivered on which the defendants rely is the one from the father above mentioned.

The court, after considering all of these facts, found for the plaintiff, and rendered judgment granting her immediate possession, and damages for the use and occupation of the premises in the sum of $420 and costs. A motion for new trial was duly filed, overruled, and exception saved, and an appeal lodged in the United States Court of Appeals of the Indian Territory, and the same now comes to us for our consideration by virtue of our succession to that court.

*Maxey & Runyan,* for appellants.—Adoption or affirmance of a voidable lease by acceptance of rent: *Oregon Ry. Co. v. Oregon Ry & Nav. Co.,* 28 Fed. 505; *Golding v. Brennan,* 67 N. E. 239; *Eureka Co. v. Baily Co.,* 11 Wall. 491; *Gold Minco v. Nashville Bank,* 96 U. S. 644.

*Benj. Martin, Jr.,* for appellee.—The natural guardian could not make a valid lease of ward's land without authority of court: *Indian Land & Trust Co. v. Shoenfelt,* 79 S. W. 134, 135 Fed. 484; Mansfield's Dig., ch. 23.

DUNN, J. (after stating the facts as above.)   Counsel for plaintiff in error in their brief take the position that section 35 of the Creek Agreement, passed and approved by Congress on March 1, 1901, c. 676, 31 Stat. 871, and afterwards ratified by the Creek nation, commonly known as the "original agreement," gives to Creek parents, as the natural guardians of their minor children, the right to lease the lands allotted to them without the intervention of any court, and that when such leases were made, they were *prima facie* valid and legal.   Counsel for defendant in error meet this by the authority of the cases (*Indian Land & Trust Co. v. Shoenfelt*, 5 Ind. T. 41, 79 S. W. 134, and *Pilgrim v. McIntosh et al.* [Ind. T.] 104 S. W. 858), which hold generally that a lease by a natural guardian who has not submitted himself and his actions to a court having jurisdiction, nor executed a bond, nor procured an order to lease, is void.

The first of these cases (*Indian Land & Trust Co. v. Shoenfelt*) was carried to the Circuit Court of Appeals, and there reversed (135 Fed. 484, 68 C. C. A. 196) on other grounds than the one of interest here.   So that, so far as the principle involved in this case is concerned, it may be considered as an expression of the judgment of the Court of Appeals of the Indian Territory on the proposition.   That case grew out of the action of the United States Indian agent acting on behalf and in the interest of a minor, under the statute which gave such official power to place a minor in possession of his lands when they were held under contract "not obtained in conformity to law."   The second case was one where Pilgrim sought to enjoin the regular appointed guardian and the United States Indian agent from interfering with him in his possession of the lands of a minor, which he held under a contract made with the natural guardian.   So it will be seen the defendants in each case were proceeding to protect the interests of, and acting for the minor, and the court held that as against the minor, the contracts of lease presented which had been made by the natural guardian were void.   The basis for the conclusion to which the court came was that the statutes of Arkansas relating to guardians

and minors were controlling, and were neither repealed nor their controlling force defeated by any subsequent treaty or federal legislation.

In our judgment a proper understanding of the rule enunciated by the court in those two cases goes no further than to hold the contracts entered into by the natural guardians void when in conflict with the interests of the minor, as represented by the government or a legally appointed guardian; that is, that they were void or not enforceable as against the minor. A contract entered into by a minor himself with an adult, is not void as to the adult, except on the same grounds that would make it void between two competent contracting parties. Infancy is a plea personal to the infant, and is not available to one dealing with him, but in reference to such contracts, "the words 'void' and 'voidable' are often loosely used, and much confusion has resulted therefrom. 'Void' is so frequently employed in the sense of 'voidable' as to have almost lost its primary significance; and, when it is found in a statute, judicial opinion, or contract, it is generally necessary to resort to the subject-matter or context in order to determine precisely what meaning is to be given to the word." 29 Am. & Eng. Ency. of Law, 1065; *Pearsoll v. Chapin,* 44 Pa. 9; Hammon on Contracts, § 155. In keeping with the quotation from the Encyclopedia of Law, *supra,* and with special applicability to the question before us, Mr. Hammon in his work on Contracts, *supra,* speaking to this subject says:

"The courts are not always discriminating in the use of the terms 'voidable' and 'void' and that the word 'void' is often used where 'voidable' is more or less obviously meant. This want of discrimination will be found to occur in many of the cases in terms holding an infant's contract to be void. A majority of these cases appear to establish only that the contract cannot be enforced against the infant or some other collateral point equally consistent with its being merely voidable, except when they show distinctly that the contract is voidable, and not void. In any event, by the weight of authority both in America and in England, the doctrine that an infant's contracts may be absolutely void does not prevail,

and, subject to one exception, his contracts are valid if he elects to treat them so when he comes of age."

In the case at bar the infant could not have made this contract so that it would be binding as against herself, by reason of lack of competency or power. The rights of majority had not been conferred, nor had they been attained. Hence she was not competent under the law to deal in this way with her landed estate. Neither could the natural guardian deal with this estate, for that the power had not been vested, and in either event a contract of this character, made by the infant or by the natural guardian, would be voidable or void at the instance of the infant, because of the want of power to make it. There was nothing fraudulent in the contract. There was nothing illegal nor against public policy in it. The subject-matter and the entire transaction was one recognized by law, and the only defect was the existing lack of power in the party acting for the infant to effectuate an enforceable obligation.

Plaintiff in error insists that by receiving from the lessee the money for rent of the land, under the terms of the lease, after the death of the child, was a ratification of it. This contention is answered on the part of the defendant in error by the argument that this lease having been made in the name of and for the child, and not the father, was not subject to ratification, as a contract cannot be ratified by any one other than the party for whom or in whose name it is made, and we will say that many of the cases seem to recognize this as a distinctive element of ratification. *Ellison v. Jackson Water Co.,* 12 Cal. 542; *Western Publishing House v. District Tp. of Rock,* 84 Iowa, 101, 50 N. W. 551; *Pearsoll v. Chapin, supra.* If the father could not ratify this contract or lease for any reason, could he, after the death of the child, adopt, confirm, or affirm it, and make of it his own contract? Many of the authorities we have examined improperly, it seems to us, make no discrimination between the terms "ratification" and "adoption," when used in reference to contracts. Some of the cases we have just cited are of that character. A most

comprehensive article dealing with the meaning given by the courts and lexicographers to the terms "ratification," "adoption," "affirmation," and "confirmation" is found in 19 Cent. Law J. at page 485 (1884), in which a great number of authorities are cited, and the conclusion reached therefrom is that the indiscriminate use of these words is entirely unjustified and improper. Ratification and confirmation appear to be considered as almost, if not quite, synonymous. In Black's Law Dictionary, p. 995, "ratification" is defined as being "the confirmation of a previous act, done either by the party himself or by another; confirmation of a voidable act. See Story, Ag. §§ 250, 251; 2 Kent, Comm., 237." And the word "confirm" is held by the same author, at page 249, to mean "to ratify what has been done without authority or insufficiently." Each of these words apparently carries with it the idea of the recognition of a previous unauthorized act of an agent, done, or purported to be done, for a principal who subsequently ratifies or confirms it.

From all the authorities, we are constrained to come to the conclusion that there was neither a ratification nor a confirmation by the father, by his acceptance of the money under the lease, that either of these terms would be improper as applied to the facts in this case. There remains then for our consideration the situation presented and denoted as embraced under the terms "adoption" or "affirmation." Did the act of the father bring the contract within the scope of the legal situation denominated and recognized by these terms? The term "ratification," as we have seen, most frequently arises in reference to contracts of agents. The term "adoption," however, has a broader signification, and is very often applied to contracts made for and on behalf of corporations not yet organized or in existence, and made by those who propose to organize a corporation and in its interest. They are commonly denominated "promoters' contracts." For cases of this character, see *Stanton v. New York & Eastern Railroad Co.*, 59 Conn. 272, 22 Atl. 300, 21 Am. St. Rep. 110; *Schreyer v. Turner Flouring Mills Co.*, 29 Or. 1, 43 Pac. 719; *Battelle v. Northwestern Cement*

& Concrete Company, 37 Minn. 89, 33 N. W. 327; McArthur v. Times Printing Co., 46 Minn. 319, 51 N. W. 216, 31 Am. St. Rep. 653.

The Supreme Court of Oregon, in drawing the distinction mentioned above between the terms "adoption" and "ratification," says in the case of Schreyer v. Turner Flouring Mills Co., supra:

"In their primary signification there is a manifest distinction between 'adoption' and 'ratification.' The one signifies to take and receive, as one's own, that with reference to which there existed no prior relation, either colorable or otherwise; while the other is a confirmation, approval, or sanctioning of a previous act, or an act done, in the name or on behalf of the party ratifying, without sufficient or legal authority; that is to say, the confirmation of a voidable act."

And the Supreme Court of Minnesota, in the case of McArthur v. Times Printing Co., supra, in reference to the same proposition, says:

"The act of the corporation in adopting such engagements is not a ratification which relates back to the date of the making of the contracts by the promoter, but is, in legal effect, the making of a contract as of the date of the adoption."

But it is not exclusively so used, but relates also to contracts of individuals, the scope of the principle involved being well expressed by Justice Walton in the case of Clough et al. v. Clough, 73 Me. 487, 40 Am. Rep. 386, wherein he says:

"If one acknowledges and delivers a deed which has his name and a seal affixed to it, the deed is valid. No matter by whom the name and seal were affixed. No matter whether with or without the grantor's consent. The acknowledgment and delivery are acts of recognition and adoption, so distinct and emphatic that they will preclude the grantor from afterward denying that the signing and sealing were also his acts. They are his by his adoption. Without delivery the instrument has no validity. By force of our statutes the instrument is incomplete without acknewledgment. Till one or both of these acts are performed the instrument has no more validity than a blank deed. By taking the instrument in this incomplete condition and completing it the grantor makes it his deed in all particulars. He adopts the signature and the seal the same as he does the habendum and the covenant which

were inserted by the printer of the blank. The deed is not sustained on the ground of ratification, but adoption. * * * No matter by whom the signing and sealing were performed, nor whether with or without the grantor's consent. By completing the instrument he adopts what had previously been done to it, and makes it his in all particulars."

See, also, Wald's Pollock on Contracts (3d Ed.) pp. 620, 621, wherein the learned author says:

"A party to an apparent agreement which is void by reason of fundamental error has more than one course open to him. * * * He is entitled to treat the supposed agreement as void, and is not, as a rule prejudiced by anything he may have done in ignorance of the true state of the facts, yet after that state of facts has come to his knowledge, he may nevertheless elect to treat the agreement as subsisting; or, as it would be more correct to say, he may carry his execution by the light of correct knowledge, the former intention which was frustrated by want of the elements necessary to the formation of any valid agreement. It is not that he confirms the original transaction, for there is nothing to confirm, but he enters into a new one."

The law as recognized and laid down in the foregoing authorities, when applied to the facts in the case at bar, in our judgment justify us in holding that when the father, who had, without authority, executed on behalf of his minor child a contract for a lease of the land owned by such child, and then who, after the death of the child, and on his inheriting the interest given him by law therein, recognizes the lease and its terms by accepting rents from the lessees under it, adopts the contract, and makes it his own, and makes it of a binding enforceable obligation against himself where otherwise it would not have been. Contracts of infants are frequently termed by the court, as we have seen, "void" or "voidable." Such contracts, where not illegal, are subject to affirmance or disaffirmance by the infants after they have attained their majority. On this Mr. Bishop, in his work on Contracts (2d Ed. § 936), says:

"The privilege of infancy is personal. During the infant's life, he only can avail himself of it; after his death, only his heir or administrator. Neither his guardian can during minority, nor

even when he becomes of age can his creditor. But, as just intimated, his executor or administrator, or his heir, succeeds on his death to his right of avoiding his contract. Or, when he has pleaded his infancy, an adult, whose rights have been thereby affected, can do the same."

We believe that no one will contend that a contract such as is here involved, was one that the infant could not have made after she attained her majority. If she could make it, then there is no doubt in our mind about her power to adopt it, or affirm it should she so elect. And the same power over this property and contract which the infant would have possessed after attaining majority had she lived, on her death could be exercised by the father to the extent of his estate after he came into possession of it. We think there can be no doubt but that had the infant in this case survived, and had she attained her majority, during the term of this contract, and had she received the money under it just as her father, did, it would have amounted to an adoption or affirmance of it. This being true, the recognition by the father of the lessees whom he placed upon the land, the reception from them of the rents under the contract, amounted to an adoption or affirmation of the same, and protected the lessee in his possession. This conclusion on our part necessarily results in the reversal of the judgment of the trial court.

The cause is accordingly remanded, with instructions to proceed in accordance with the terms of this opinion.