## COSDEN OIL & GAS CO. v. HENDRICKSON et al.

No. 13518—Opinion Filed March 27, 1923.

Rehearing Denied July 3, 1923.

Second Rehearing Denied Dec. 11, 1923.

Leave to File Third Petition for Rehearing Denied Dec. 18, 1923.

(Syllabus.)

1. **Courts—Infants—Rules Governing Sale of Oil and Gas Lease on Minor's Land.**

The Supreme Court of this state by virtue of section 2, art. 7, of the Constitution and section 5347, Rev. Laws 1910, promulgated on June 15, 1914, rule No. 9 governing procedure in the sale of oil and gas mineral leases upon the land of a minor, and though the State Legislature thereafter conferred upon the county courts the power to make their own rules, in the absence of any rule or statutory provision superseding the said rule No. 9, its directions must be followed; and any agreement or contract entered into in violation of the provisions of such rule is void.

2. **Infants—Void Contract by Guardian—Adoption Upon Attaining Majority.**

It is possible for a person, after attaining majority, to adopt a void contract, one not inherently against public policy, made during his minority by his guardian by acting so as to create a clear implication that the transaction was intended to be adopted, and thereby create a new contract in terms the same as the void contract.

3. **Words and Phrases—"Adopt"—"Ratify."**

Though sometimes used synonymously, from a strictly lexical standpoint, the word "adopt" should be used to apply to void transactions, while the word "ratify" should be limited to the final approval of a voidable transaction by one who theretofore had the optional right to relieve himself from its obligations.

4. **Infants—Void Contract by Guardian—Implied Adoption After Attaining Majority—Degree of Proof.**

Before a court of equity will imply an adoption of a void contract, one involving a mineral grant to a minor's land in violation of a rule of procedure designed to protect the minor and required by public policy, the evidence should be very strong and the position of the ward, in denying adoption after attaining majority, revoltingly unjust and inconsistent with his conduct toward the other parties to the contract.

**5. Same—Equity—"Clean Hands"—Right to Relief.**

One who violates a rule of public policy in dealing with the guardian of a minor in regard to a minor's property, even though the element of public interest is later removed by extraneous circumstances, cannot be said to have the "clean hands" required of a party seeking relief before a court of equity.

**6 Equity—Refusal to do Equity—Right to Relief.**

One who was a party to a transaction in violation of public policy or who knowingly accepted benefits of such transaction cannot maintain a technical legal position in a court of equity and thus shift the entire burden to another party to the latter's detriment. When one approaches a court of equity for relief, he should offer such terms as will tend to vindicate any imputation of injustice on his part.

**7. Equity—Relief—Parties in Pari Delicto—Exception to Rule—Public Policy.**

Usually where both parties are "in pari delicto," or are both in an inequitable situation, the court will refuse to interfere; but since this doctrine is founded on public policy, that element sometimes requires the relaxation of the rule. The courts will not aid in carrying out an illegal transaction, and will sometimes interfere to prevent a greater offense against public morals and good conscience.

**8. Equity—Power to Grant Proper Relief.**

The rule has been adhered to by this court that where a party is in a court of equity invoking its aid to grant equitable relief, it is always within the power of the court to impose upon such party by its decree such conditions as are just and proper under the circumstances of the case.

Error from District Court, Creek County; John L. Norman, Judge.

Petition by Cosden Oil & Gas Company against Thomas Hendrickson, Eliza Fugate, nee Hendrickson, and James S. Fugate. Decree for defendants. Plaintiff brings error. Modified and remanded.

J. C. Denton, J. H. Crocker, and R. H. Wills, for plaintiff in error.

McDougal, Lytle, Allen & Pryor, for defendants in error.

KENNAMER, J. This case was tried by the court below without a jury, and the court's findings of fact are as follows:

"1st. That the land covered by the oil and gas lease in controversy is the allotment of the defendant Thomas Hendrickson, who is a duly enrolled Creek Indian citizen of 1-16 blood.

"2nd. That on the 20th day of March, 1916, James Hendrickson, as the guardian of said Thomas Hendrickson, then a minor, made, executed and delivered to the General Investment Company an oil and gas mining lease, in due form, for a period of five years from that date, on said land; that thereafter, to wit, on the 7th day of May, 1916, the General Investment Company duly assigned said lease to the plaintiff, Cosden Oil & Gas Company.

"3rd. That on the 18th day of March, 1921, said plaintiff was the true and lawful owner and holder, by said assignment, of said oil and gas lease, and upon said date, to wit, the 18th day of March, 1921, Eliza Fugate, as the legal guardian of the defendant Thomas Hendrickson, then a minor, made, executed and delivered unto the plaintiff the extension agreement involved in this controversy, whereby said lease was attempted to be extended for a period of five years from the 20th day of March, 1921, in consideration of $7,000 which consideration was at the time actually paid by the plaintiff to the said Eliza Fugate as said guardian. That in the making of said extension agreement rule 9 of the Supreme Court rules, adopted June 15, 1914, was not observed, but that all papers relating to said extension agreement and the said extension agreement itself were all executed on the same day, to wit, March 18, 1921.

"4th. That on the 5th day of September, 1921, said Thomas Hendrickson arrived at the age of 21 years. That subsequent to the receipt of said $7,000 consideration by said guardian and prior to the arrival at age, of Thomas Hendrickson, a large part of said $7,000 consideration had been expended by said guardian for the use and benefit of said ward, and that on September 5, 1921, said guardian had on hand approximately $3,218 of said consideration unexpended, and that subsequent to the 5th day of September, 1921, all of said unexpended balance of said proceeds were paid over to said Thomas Hendrickson by said guardian and that at all times the said Thomas Hendrickson had full knowledge of said extension agreement, and that he used that portion of the proceeds of the consideration for said extension agreement so delivered to him by said guardian, with full knowledge of its source and the circumstances under which it had been received.

"5th. That on the 6th day of January, 1922, the said Thomas Hendrickson, being then of full age, executed and delivered in proper form his general warranty deed to the defendant, Eliza Fugate, covering the land covered by said extension agreement; that in the face of said deed and immediately preceding the words 'signed and delivered,' etc., and immediately following the habendum clause, appears a separate paragraph reading as follows: 'Subject to a valid existing oil and gas mining lease,' and that on said date there was no other lease upon said land other than the oil and gas mining lease of the plaintiff as extended by the extension agreement plead in this cause.

"6th. That on February 28, 1922, the defendant Thomas Hendrickson executed and

delivered unto the said Eliza Fugate as his former guardian his receipt for the full amount, of the consideration for said extension agreement, to wit, $7,000.

"7th. That there had been no drilling options, under the lease of 1916 prior to November, 1920, but that in the month of November, 1920, the plaintiff began the drilling of a well upon said premises; and at the time of the execution of the extension agreement, to wit, on March 18, 1921, said well had been drilled to the approximate depth of 2,740 feet. That after the execution of said extension agreement of March 18, 1921, the drilling of said well continued to the depth of 3,530 feet, by the plaintiff, but without finding oil or gas in paying quantities; and in August, 1921, said well was plugged and no other well has ever been commenced on said premises; and upon the plugging of said well the plaintiff removed from said premises the drilling equipment. That during the time of such drilling operations upon said premises said premises were in what was known as wildcat territory. The court further finds, however, that it was not the intention of the plaintiff to abandon said lease by ceasing their drilling operations in the manner above set out and removing their equipment therefrom.

"8th. The court finds that no part of the $7,000 consideration for said extension agreement has ever been refunded or tendered back to the plaintiff in this case.

"9th. The court finds that out of said $7,000 extension agreement consideration, Eliza Fugate, as guardian of said ward, paid to the defendant James S. Fugate the sum of $450 on April 4, 1921, for the board and maintenance of said minor prior to said date.

"10th, That on March 1, 1922, said Eliza Fugate, former guardian of the defendant Thomas Hendrickson, paid to the said Thomas Hendrickson the sum of $2,605 out of said $7,000 consideration for said extension agreement; although on a preceding date, to wit, February 28, 1922, said Thomas Hendrickson had executed his formal receipt to Eliza Fugate as former guardian, covering the full amount of said $7,000 consideration; and that after the receipt by the said Thomas Hendrickson of said $2,605 from said Eliza Fugate, the said Thomas Hendrickson delivered the said amount of $2,605 to the said Eliza Fugate, his mother. The court is unable to state from any evidence in this case what has ever become of said $2,605 thereafter."

The plaintiff in error originated the action below to have the court declare it to be the absolute owner of the aforesaid oil and gas lease; that the court adjudge said lease to be in full force and effect; that its leasehold title be quieted and that it be awarded possession of the real estate; that the defendants be enjoined and restrained from disposing of the $7,000 consideration for the extension agreement; and that if the court found the lease to be void, then to decree the return of the $7,000 consideration. To this, the defendants answered and prayed for cancellation of the lease on the grounds of violation of the said rule No. 9 of this court (47 Okla. xvi). Soon after, the plaintiff amended its petition and added the basis for a claim that the defendants were estopped from asserting the invalidity of the lease. due to their inequitable position. It may readily be seen, therefore, that both parties were claiming injury and the right to equitable relief. Both were approaching the court of conscience to obtain an adjustment of the controversy.

Primarily, the position of the plaintiff in error is not a meritorious one. The case of Winona Oil Co. v. Barnes, 83 Okla. 218, 200 Pac. 981, and the case of Carlile et al. v. National Oil & Development Co. et al., 83 Okla. 217, 201 Pac. 377, unequivocally commit the courts of this jurisdiction to the holding that when an agreement is made for the leasing of a minor's land for mineral purposes, be it the original agreement or a so-called extension, and in the absence of procedure prescribed by statute, such an agreement must be in conformity with court rules of procedure, or it is as void as though never made.

On June 15, 1914, there having been no statutory enactment for procedure in such cases, this court promulgated its rule No. 9, definitely establishing a reasonable course of procedure to protect the best interest of the minor. Both of the above cited cases turned directly upon the said rule No. 9 and are authority for the right of the court to prescribe such rules and their application.

Counsel for plaintiff, however, cite chapter 201 of 1919 Session Laws of Oklahoma, approved April 4, 1919, as nullifying rule No. 9 and leaving no definite procedure for the probate court in the confirmation of a mineral lease. With this argument the court cannot concur. Granting the constitutional right of the Legislature to deny the Supreme Court the power to make rules of procedure when no statutory rules exist, a careful examination of the cited statute has convinced the court that it does not repeal rule No. 9, but merely purports to give the county courts the power to promulgate their own rules of procedure after the passage of the statute. Should the statute be constitutional, and we do not, at this time, choose to pass upon that question, its greatest effect would be to give the county court the power to supersede rule No. 9, in that particular county, by publishing a rule conflicting with the former. We are unable to find any evidence of such action by the county court of Creek county. and are therefore forced to treat rule No. 9 in

full force until specifically repealed or superseded.

But the plaintiff in error has injected into the case another consideration. It established, as is shown by the findings of the trial court, that the defendant Thomas Hendrickson, after becoming of age, accepted certain benefits from the extension agreement, and these acts, the plaintiff avers, constitute a ratification or adoption of the contract. We are prone to affirm as a sound principle of law that it is possible for a person, after attaining majority, to adopt a void contract made by his guardian during his minority, and we believe the authorities are ample to support this view.

Justice Dunn, in the case of Capps v. Hensley, 23 Okla. 311, 100 Pac. 515, made a distinction between the words "ratify" and "adopt," saying that, though they have been used synonymously in an indiscriminate manner, they are really not synonymous. He declared that a void contract was not subject to ratification, but could be adopted, and that the word "adopt" was improperly used to denote confirmation or ratification of a voidable act.

The Carlile Case, supra, also makes clear distinction between these words and intimates that the void contract there under consideration might have been adopted, though the court later limited the scope of its statement by declaring that it was not attempting to pass upon the question.

In Perkins v. Middleton, 66 Okla. 1, 166 Pac. 1104, the court made the lexical error that Justice Dunn deplored. Quoting from that case:

"One may ratify a void transaction by acting so as to create a clear implication that he intends to ratify the contract."

And, though dealing with a voidable contract, the court in Lasoya Oil Co. v. Zulkey. 40 Okla. 690, 140 Pac. 160, cited several cases from other jurisdictions where the court held that a void contract might be vitalized by adoption.

This court concurs with Justice Dunn in his distinction as to the meaning of the words "ratify" and "adopt", and we believe that strict lexicology requires that the word "adopt" should be used to apply to void transactions, while the words "ratify" or "confirm" should be limited to the final approval of a voidable transaction by one who theretofore had the optional right to relieve himself from its obligations.

Counsel have cited numerous cases wherein the courts have applied the doctrine of estoppel to a person to prevent him asserting invalidity of a transaction made during minority, but we doubt seriously the application of such a rule to the type of case at bar. In all well considered cases, that we have examined, they require, before applying an estoppel, the same type of acts as we believe might be called an adoption of the contract.

In view of the fact that the procedure prescribed by rule No. 9 was founded on public policy and intended to serve the best interests of the minors, of whom the courts are the ultimate guardians, or as was said by Justice Elting in the Carlile Case, supra:

Courts are supposed to stand guard over the rights of minors, and whose duty it is to see that the safeguards of the law, that have for their purpose the protection of minors in their particular rights, are not impaired, and the courts cannot in any particular case sanction any relaxation of the rules that are intended to protect those who labor under disabilities and are held not capable to contract for themselves"

—before a court of equity will imply an adoption, after majority, of a void contract, one involving a mineral grant to a minor's land in violation of a rule of procedure designed to protect the minor and required by public policy, the evidence should be very strong and the position of the former minor in denying adoption revoltingly unjust and inconsistent with his conduct toward the other parties to the contract.

In reaching this conclusion, we do not acquiesce in any argument tending to base a right upon the original void contract. The entire theory of adoption is the entering into a new contract by a party fully competent, under the law, to contract for himself. That is to say, the terms of the void contract are assented to and adopted by the parties when there exist no legal restrictions against the making of such a contract. The rights of the parties in such a case then rest upon the new contract, and not upon the original void one.

When a minor reaches majority, the element of public policy for his protection recedes, but this consideration does not seem to this court to "clean the hands" of one who has dealt with the minor's guardian in a reprehensible manner so as to entitle such a party to approach a court of equity, under ordinary circumstances, and obtain from that court a declaration of estoppel of an implied adoption of the transaction that was absolutely void. To permit such procedure would promote the habitual violation of the sacred duty to protect those under disability from connivance and dissipation of their in-

terests. It is the opinion of this court that a contract between a guardian and another, entered into a few months before the majority of the minor, without competition, and in a private if not secret manner, incumbering the natural and valuable resources of the minor's property for a long period after majority, reeks strongly of connivance; and unless there is strong evidence of adoption, including such acts of the minor, with full knowledge of all the facts, necessary to constitute assent to all the terms of the contract by the minor after reaching majority, the courts should not countenance such dealings. Whether or not the facts in the case at bar were sufficient to imply an adoption, the court does not deem necessary to decide, due to the extraordinary position of the defendants.

These circumstances place the defendants in practically as unconscionable position as that of the plaintiff, if not more so. All of them have accepted the benefits of the consideration paid by plaintiff, with full knowledge of its source, and Thomas Hendrickson deeded to his codefendants, which deed they accepted, the property involved, yet that deed contained a direct reference to a "valid existing oil and gas mining lease," and the lease in controversy was found to have been the only "existing" lease at that time. The defendants have practically thrown themselves within the provisions of section 1150, Rev. Laws 1910, which reads:

"Any person or corporation having knowingly received and accepted benefits or any part thereof of any conveyance, mortgage or contract, relative to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage, or contract, or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

Instead of paying or tendering back the $7,000 consideration, they have, on the contrary, contended that they have the right to keep it, claiming it to be a payment under mistake of law. If such be the fact, the defendant, Eliza Fugate, nee Hendrickson, having been a party to the transaction which we have declared as against public policy, is surely not a party who can claim a greater right to recognition in a court of equity than the plaintiffs, and her codefendants, having knowingly accepted benefits from the consideration of the transaction, can hardly be declared without fault. Without a doubt, were such parties attempting to come originally into a court of conscience with such a claim as they assert, they would be dismissed without delay. Eliza Fugate does not come in with "clean hands," and her codefendants, far from offering to do any equity, refuse on technical legal grounds.

Usually, where both parties are in an inequitable position, the doctrine "In pari delicto melior est conditio possidentis" (Where parties are equally at fault, the situation of the possessor is the better one), is applied, and the court will refuse to interpret, leaving them where they placed themselves. But this doctrine is founded on public policy, and public policy sometimes requires its relaxation. 21 C. J. 189, sec. 175. For instance, the courts will not aid in carrying out an illegal transaction, and equity will sometimes interfere to prevent a greater offense against public morals and good conscience. Saylor v. Crooker, 97 Kan. 624, 156 Pac. 737; Hobbs v. Boatright, 195 Mo. 693, 93 S. W. 934, 5 L. R. A. (N. S.) 906, and note.

Such a situation, we believe, exists in this case. To refuse to interfere would, in effect, condone the reprehensible transaction between plaintiff and the guardian. Therefore, this court will attempt to administer the equities of the parties as they appear, to prevent unnecessary injustice and prevent the creation of an inequitable situation.

The rule has been adhered to by this court that, where a party is in a court of equity invoking its aid to grant equitable relief, it it is always within the power of the court to impose upon such party by its decree such conditions as are just and proper under the circumstances of the case. Stevens v. Elliott, 30 Okla. 41, 118 Pac. 407; Skidmore v. Leavitt et al., 73 Oklahoma, 175 Pac. 504,

In view of the foregoing, the court is of the opinion that the cause must be remanded to the court below, with directions to enter a decree to this effect: That shall the defendants, within 60 days from the time of the entry of said decree, pay to the plaintiff the sum of $7,000, with six per cent. interest, as was received by them or any of them in the transaction extending the lease upon defendant Thomas Hendrickson's property, then and in that case, and at such time that such payment is made, the defendants shall have judgment quieting the title in them as their interest may appear as against the plaintiff, the Cosden Oil & Gas Company, a corporation, and canceling said extension agreement. But in case said

defendants fail to make such payment within such time, upon application of plaintiff the court shall enter a decree declaring said contract binding and in full force and effect and shall grant plaintiff such relief as is necessary to protect its legal rights thereunder.

JOHNSON, C. J., and McNEILL and NICHOLSON, JJ., concur. BRANSON, J., concurs in conclusion reached.