CARLISLE et al. v. NATIONAL OIL & DEV. Co. et al.

No. 14402—Opinion Filed Jan. 22, 1924.

Rehearing Denied March 31, 1925.

(Syllabus.)

1. Infants — Adoption of Void Contract After Majority.

A person who, with full knowledge of the facts, at a time when he is fully competent and capable to contract for himself, accepts the benefits accruing under the void contract, adopts the contract and is estopped to deny the validity thereof.

2. Same—Oil and Gas Lease.

Where an oil and gas lease was void because it was not executed in accordance with rule 9, but the minor after reaching his majority, with full knowledge of the facts, made a voluntary settlement with his guardian, receiving from him the benefits which had accrued under the void contract, and continued to accept the rentals and royalties accruing thereunder, the finding of the trial court that the void contract had been adopted is supported by sufficient evidence.

3. Escrows — Time of Conveyance Taking Effect—Doctrine of Relation.

A conveyance placed in escrow to be delivered to a grantee at a subsequent date and after a compliance with the terms of an escrow agreement will ordinary take effect at the time of the final delivery and not before. In order to prevent a manifest hardship and injustice, the fiction of relation has frequently been resorted to for the protection of the grantee against intervening rights, when the escrow conditions have been performed and when such is established as the intention of the parties; but, where it is not required for such purpose, this fiction will not be invoked, and the deed operates according to the truth of the case.

4. Same.

The fiction of relation will not be invoked where the grantee wrongfully gets possession of the instrument, and a subsequent agreement is made differing from the escrow agreement ratifying the wrongful delivery.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by Levi Carlisle and another against the National Oil & Development Company and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

B. B. Blakeney, Hubert Ambrister, and Rowland & Talbot, for plaintiffs in error.

T. J. Flannelly, Paul B. Mason, H. H. Montgomery, J. P. Shipman, and Burford, Miley, Hoffman & Burford, for defendants in error.

COCHRAN, J. This action was commenced by the plaintiffs in error, against the defendants in error, for the purpose of canceling an oil and gas lease covering the lands of Levi Carlisle. The lease was executed by Thomas L. Carlisle, as guardian of Levi Carlisle, to the National Oil & Development Company, on February 23, 1917. Judgment was rendered against the plaintiffs on the pleadings, and from this judgment an appeal was taken to this court. The opinion by this court is found in the case of Carlisle v. National Oil & Development Company, 83 Okla. 217, 201 Pac. 377. It was there decided that the extension lease contract executed on February 23, 1917, by the guardian of Levi Carlisle was void, because it was not executed in compliance with the procedure provided by rule 9 of the Supreme Court, 47 Okla. xvi, and the case was reversed and remanded for further proceedings. The case was tried upon its merits, and judgment was rendered for the defendants, from which the plaintiffs have appealed. The judgment was rendered by the trial court on the theory that the testimony showed an adoption by Levi Carlisle of the contract entered into by his guardian on February 23, 1917, after Levi Carlisle had reached his majority and with full knowledge of the facts in connection with the transaction. The finding of the trial court on the question of adoption will not be disturbed by this court, unless the same was clearly against the weight of the evidence or unless as a matter of law the contract was not subject to adoption. The finding of the trial court on the question of fact was clearly in accord with the weight of the evidence, as the testimony in this case shows that the contract under which the defendants claim was executed on February 23, 1917, upon a petition signed by the guardian and by Levi Carlisle. He arrived at his majority on September 14, 1917, and according to the defendant and fully understood the transaction between his guardian and the defendant and fully understood the same. The agreement provided for a cash consideration of $100, which was paid and

the payment of a royalty of one-eighth of the oil produced from the premises instead of one-tenth, which had theretofore been paid. After Levi Carlisle arrived at his majority, he made a settlement with his guardian and received from him the balance due on the settlement, which represented a portion of the benefits accruing from the contract executed in February, 1917. From September 14, 1917, until November 10, 1917, the royalty checks for oil produced under this lease contract were sent to the guardian of Levi Carlisle, but were by him returned to the pipe-line company on November 10, 1917, with the advice that Levi Carlisle was then of age and that payment should be made to him. The guardian signed a written transfer authorizing the payments to Levi Carlisle, which was accepted by Levi Carlisle in writing in November, 1917, and thereafter royalty checks were sent to Levi Carlisle until March 15, 1918, when he sold the land to John H. Kane. These checks were not cashed immediately by Levi Carlisle, but were used as collateral to obtain money from the bank, but were cashed by him prior to March 15, 1918. These acts on the part of Levi Carlisle were with full knowledge that the money received by him was being paid under the terms of the agreement executed in February, 1917, and was also received by him after Capps had advised him that the acceptance of the money would be a recognition of the lease to the National Development Company. These facts were sufficient to constitute an adoption of the contract of February, 1917, provided the contract was subject to adoption. Section 920, Rev. Laws 1910, provides:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the person accepting."

And section 1150, Rev. Laws 1910, is as follows:

"Any person or corporation having knowingly received and accepting the benefits or any part thereof of any conveyance, mortgage, or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage, or contract, or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

In Capps v. Hensley, 23 Okla. 311, 100 Pac. 515, this court held that where a void agricultural lease was executed by the natural guardian of an Indian minor, and the minor died leaving the father as the sole heir and he continued to accept rents from the premises, he was estopped to assert the invalidity of the contract, and in the second paragraph of the syllabus the court said:

"Where in such a case, after the death of the infant, the natural guardian, being the father and sole heir, recognizes the tenant holding thereunder by accepting from him the money for the rent of the premises, such action on his part will constitute an affirmance or adoption of the contract, and create of it a binding and enforceable obligation between them."

In Lasoya Oil Company v. Zulkey, 40 Okla. 690, 140 Pac. 160, the legal guardian executed a lease on a minor's land and the minor after reaching majority brought suit to cancel the lease, alleging that it was obtained by fraud and collusion of the court and guardian. It appears the minor, after becoming of age, made a voluntary settlement with the guardian, receiving bonus and rentals collected by him under the lease, and the court held that such acts constituted a ratification of the lease. To the same effect is the case of Perkins v. Middleton, 66 Okla. 1, 166 Pac. 1104. In Scott et al. v. Signal Oil Company, 35 Okla. 172, 128 Pac. 694, a departmental oil and gas lease was executed which contained a provision that no assignment of the lease could be made without the written consent of the lessor and the Secretary of the Interior. An assignment was made in violation of this provision. It appeared that lessor accepted the rents and royalties from the assignee of the lease, and this court held that by her conduct in accepting the rents and royalties she waived her rights to the lease. See, also, Avery et al. v. Van Voorhis et al., 42 Okla. 232, 140 Pac. 615. In Cosden Oil & Gas Company v. Hendrickson et al., 96 Okla. 206, 221 Pac. 86, the court said:

"* * * It is possible for a person, after reaching majority, to adopt a void contract made by his guardian during his minority, and we believe the authorities are ample to support this view."

Much confusion has arisen due to the application of the statutes above quoted to voidable transactions in some instances and to void transactions in others, and to the use of the word "estoppel" in connection with such transactions in other cases. In Lasoya Oil Company v. Zulkey,

supra, the transaction was voidable and the acts of the lessors were designated a ratification. In Scott v. Signal Oil Company, supra. the contract was void and the act of the lessors was designated and adopted. In Capps v. Hensley, supra, and Cosden Oil & Gas Co. v. Hendrickson, supra. the court calls attention to the fact that adoption should be used to apply to void transactions, and ratification should be limited to voidable transactions. In all of the cases referred to, however, the parties were denied relief because they had accepted the benefits of the contracts, whether void or voidable, with full knowledge of the facts and at a time when the party so accepting was under the law fully competent and capable of contracting for himself. It therefore does not matter whether the transaction be referred to as an adoption, ratification, or estoppel, as the effect of those holding, taken together, is to prevent a party from asserting the invalidity of a contract when such party has accepted the benefits of the contract with the full knowledge of the facts.

It is our opinion that the acts of Levi Carlisle were such as to show an intentional acceptance of the benefits of the contract with the full knowledge of the facts, at a time when he was competent and capable of making a contract, and therefore constituted an adoption of the contract. It is contended by the plaintiffs, however, that Levi Carlisle executed a lease contract to Capps in October, 1917, and thereafter filed this suit with Capps for the cancellation of the contract held by the National Development Company, and that these things were done prior to the acts of Levi Carlisle which we have held constituted an adoption, and amounted to a disaffirmance of the National Development Company's contract, and having disaffirmed the contract, it could never be rescussitated, except by the making of a new contract. The authorities cited to support this contention apply to the cases where the contract was voidable and subject to disaffirmance upon the minor reaching majority, and where, after reaching majority, the minor disaffirmed the contract, in which disaffirmance the other parties to the contract acquiesced. In the instant case, however, the contract was held by this court to be void and not voidable. Any act of the minor in conveying the property to others or in filing a suit for the cancellation of the contract would render the contract no more void than it already was. In the instant case, since the contract was void and had to be adopted, instead of

ratified, the previous acts of the party in attempting to cancel the contract or convey the property to other persons would not prevent an adoption of the contract by him, provided the rights of other persons had not intervened, so as to prevent such adoption.

It is next contended by the plaintiffs that the rights of B. E. Capps ought to be determined as of October 10, 1917, and that the contract of the National Development Company had not been adopted by Levi Carlisle at that time,. hence, no subsequent adoption by him could in any manner affect the rights of B. E. Capps under his contract. On October 10, 1917, Levi Carlisle executed an oil and gas lease on this property to B. E. Capps, and the same was deposited in the bank with an escrow agreement, according to the terms of which, the lease contract was deposited in the bank with a check from Capps to Levi Carlisle for $3,000, that in the event a suit for the cancellation of the National Development Company's lease should result in favor of Levi Carlisle, the lease contract should be delivered to Capps and the $3,000 should be delivered to Levi Carlisle. On March 15, 1918, while the suit for the cancellation of the National Development Company's contract was yet undisposed of, Levi Carlisle sold the land covered by the lease to John H. Kane. Capps was advised by C. W. Bliss that since the land had been sold by Carlisle, he had better record his lease. He thereupon obtained from the bank the lease contract and his check for $3,000, and recorded the lease and retained the check. Capps contended that Bliss was representing Carlisle in this transaction and agreed that the lease might be delivered by the bank to him at that time, and that the $3,000 should be paid to Carlisle upon the determination of the lawsuit. Carlisle denied that Bliss had any authority to make such an agreement or that he had authorized the delivery of the lease by the bank, Carlisle further contended that he had no knowledge of the lease contract having been taken from the bank until the decision by this court on the former appeal, when he went to Capps to get the $3,000 which had been placed with the lease in the bank. This question of fact was decided by the trial court in favor of this contention of Carlisle and is clearly in accord with the weight of the evidence. We will, therefore, deal with the situation as one in which the lease contract was wrongfully delivered to Capps. without the conditions upon which it was to have been delivered hav-

ing been performed. Capps, having gained possession of the lease before the performance of the conditions, acquired no rights by reason of such delivery. Powers v. Rude, 14 Okla. 381, 79 Pac. 89; McMurtrey v. Bridges, 41 Okla. 264, 137 Pac. 721; Stone v. Daniels, 80 Okla. 45, 193 Pac. 986; Hunter Realty Co. v. Spencer, 21 Okla. 155, 95 Pac. 757; Heath v. Burnham-Munger-Root Dry Goods Co., 74 Okla. 186, 177 Pac. 606.

It is contended by Capps, however, that even though the deed was wrongfully delivered to him in March, 1918, it was ratified by Levi Carlisle on May 27, 1918. After the opinion was rendered by the Supreme Court, Carlisle went to Capps to get his $3,000, and Capps advised him that the suit had not been finally disposed of and the $3,000 was not due. Carlisle complained of the wrongful delivery of the lease contract to Capps, and finally the matter was settled by Capps paying Carlisle $1,750. By reason of this settlement, instead of carrying out the original agreement, which provided for the payment of $3,000 for the lease contract in the event the suit was finally determined in favor of Carlisle, the $1,750 was paid to Carlisle for the lease without regard to the final determination of the suit. The wrongful delivery of a conveyance which had been placed in escrow may be ratified, as was held in Oland v. Malson, 39 Okla. 456, 135 Pac. 1053. Without deciding whether the facts in this case show a ratification, let us concede that the wrongful delivery was ratified, then the material question is, When did the Capps lease become effective? It is contended on the part of Capps that the delivery related back to the date the instrument was deposited in escrow and cuts off the intervening claim of the National Development Company. A conveyance placed in escrow, when made and delivered to a grantee at a subsequent date, and after a compliance with the conditions in the escrow agreement, will ordinarily take effect at the time of such final delivery and not before. McMurtrey v. Bridges, supra. In order to prevent a manifest hardship and injustice, the fiction of relation back to the date of the deposit of the instrument in escrow has been frequently resorted to for the protection of the grantee against intervening rights and to prevent an injustice being done, when the escrow conditions have been performed and such is established as the intention of the parties, but where it is not required for any such purpose, this fiction is not indulged in, and the deed operates according to the truth of the case. May v. Emerson (Ore.) 96 Pac. 1065. 16 Ann. Cas. 1129; McMurtrey v. Bridges, supra. In the instant case the lease was not delivered to Capps upon performance of the escrow conditions, but was wrongfully obtained by him, and even though the agreement in May should be considered a ratification of the wrongful delivery, there was never a delivery in compliance with the escrow agreement, hence the fiction of relation back to the time the instrument was placed in escrow has no application in the instant case. At most, the ratification only rendered the instrument valid as of the time it came into the possession of the grantee, as it came into his possession not by reason of carrying out the original intention of the parties, but by an abandonment thereof and the substitution of a new agreement. The rule is well stated in Page on Contracts, vol. 2 (2nd Ed.) section 797, as follows:

"The fiction of relation will never be invoked when the original contract is abandoned and the deed is subsequently delivered under a later contract."

In the instant case the original agreement provided for the payment of $3,000 upon the favorable determination of the litigation. The new agreement provided for the payment of $1,750 without regard to the determination of the litigation. The lease to the National Development Company was adopted by Levi Carlisle prior to March 15, 1918, the date upon which Capps obtained possession of the lease contract; therefore, the rights of the National Development Company by reason of the adoption of its lease contract are prior to the rights of Capps.

For the reasons stated, it is our opinion that the judgment of the trial court should be affirmed, and it is so ordered.

JOHNSON, C. J., and NICHOLSON, HARRISON, and MASON, JJ., concur.